5    339
146   161

5        339
25 SC ³204

## HAMILTON *v.* LYCOMING Mutual Insurance Company.

The plaintiff, having an interest in a building, applied to the agent of a mutual company for an insurance, and at the same time made the necessary cash payment and executed the premium note. The application being transmitted to the company, an alteration in the building was directed, and an authority required from the trustees of the building to effect the insurance. This was communicated to the plaintiff by the secretary, who stated, when the company were duly certified these had been complied with, a policy would be sent. The conditions were complied with, and the agent notified and requested to call and examine, but he neglected to do so. *Held,* the risk commenced from such notification of compliance with the terms of the conditional agreement.

Corporations may contract by parol within the sphere of their proper functions.

An offer to contract, communicated by post, must be considered as continually made until it reaches the other party. If he accepts before knowledge of a retraction of the offer, the contract is binding. Per Gibson, C. J.

IN error from the Common Pleas of Clinton.

*May* 29. Case stated for the opinion of the court. On the 22d January, 1842, the plaintiff in error caused a survey to be made by the agent of defendants, of a building known as the Clinton academy, and made a written application to the agent for an insurance. In this it was stated, there was a flue in the house secured by a sheet-iron collar. On the same day he executed and delivered to the agent a premium note, promising to pay in such sums as the directors might, according to their charter, demand. On this note the amount required to be paid in cash, together with the price of the policy, was paid, and the plaintiff received from the agent a certificate reciting the application, the note and the payments thereon, and stating that $1050 "will be insured on the property for five years from the date of the application, *if the company approve the said application.*" The papers were transmitted to the company, and laid before the executive committee, who did not approve of the application, nor issue a policy; but the secretary wrote the agent that plaintiff must substitute an earthen collar for the sheet-iron one, and procure the consent or authority of the trustees of the building to his obtaining an insurance, *and when the company were duly certified that these requisites were complied with,* they would send him on the policy.

This consent was obtained in writing, and the required alterations made. The plaintiff informed the agent of these facts, and requested him to call and see the written assent, and that the requirements had been complied with. This request was constantly repeated during the summer, but not complied with, owing to a press of private engagements. The building was destroyed by fire

in April, 1843. After this the agent wrote the defendants, stating
the circumstances, and that it was merely through his own neglect
he had not called on plaintiff, as requested, to see the alterations.

By the eleventh by-law, the duty of the agent was to make sur-
veys and receive applications for insurance, and to transmit to the
secretary all applications received and surveys made by him.

The facts as to plaintiff's interest were submitted, subject to the
question of their relevancy. The building had been originally
a church erected on land given for that purpose. A new church
having rendered it almost unnecessary, the members of the con-
gregation who had obtained a charter for a literary institution, in
their individual capacities authorized plaintiff to repair the build-
ing, the expenses to be paid out of subscriptions, until which time
plaintiff was to hold stock in the new corporation. He also held
mechanics' liens for repairs made by himself, amounting to $1000.
After repairing it, plaintiff occupied the building as an academy
and dwelling-house. There was also religious worship occasionally
had in the hall.

By the defendant's charter it was provided that all persons insur-
ing became members of the corporation, whose affairs were to be
managed by directors annually chosen by the members. And that
every person before he became a member by insuring, should, be-
fore he received his policy, deposit his note, part of which was pay-
able in cash, and the residue at any time the directors should appoint;
*vide* acts 20th March, 1840, p. 180; April 13, 1838, p. 363. By
the act of 1842, p. 426, it was further provided that the company
should have a lien for their premium notes on the insured property.

The court (WOODWARD, P. J.) gave judgment for defendants, for
reasons of which the following is but an outline. The charter in-
tended *policies* to be the mode of defining the rights of the insured
and their membership of the corporation. That there was peculiar
propriety for such a rule here, the members who were liable for the
contracts of the company being scattered over the country, and liable
to imposition if the naked agreement of the officers of the company
bound it. The charter intending a policy as the final consummation
of the contract, it was in this case incomplete. Nor would the neglect,
of the agent to call and examine the alterations be any discharge
of the condition precedent of defendants sending to the company
the written authority by the trustees of the building to effect the
insurance. Under these circumstances, the company could not
have enforced the payment of the note; the answer to that would
have been, our contract is not yet closed. Supposing, therefore,

the parol contract was binding on the corporation, it had not been fully entered into here.

The plaintiff in error (*propria persona*) submitted a written argument of forty-six pages. In the course of it, he said the defendants in the court below put their whole defence on plaintiff's want of interest in the building, and authority to procure an insurance on it. That a corporation must be able to contract without seal, in the same manner as they were able to authorize a seal to be affixed to a contract: it being that precedent authority, of which the seal was evidence, which rendered it obligatory. This was declared in Bank *v.* Patterson, 7 Cranch, 299, which is affirmed in Rathbone *v.* Tioga, 2 Watts & Serg. 77, 80. To the same effect is Whitehall *v.* Whitehall, 3 Serg. & Rawle, 119; Danforth *v.* Schoharie, 12 Johns. 227; Hayden *v.* Middlesex, 10 Mass. 397; Fleckner *v.* Bank of the United States, 8 Wheat. 338; 2 Kent's Com. 289—291. There was nothing peculiar in the charter, and it, as well as the words of the certificate, implied that an insurance was effected from the date of the certificate and acceptance of the premium note.

The real question is, was there a contract? Now if a delivery of a policy would have been all that was necessary under the circumstances, that is conceded, for a policy would be but evidence of an antecedent contract. The formal papers required by the company were all executed: certain conditions were required; they were performed; after this all that was left was the delivery of the policy; that was for them; and that they intended to do it is shown by their retention of the money. If the consent of the trustees had been forwarded to the plaintiffs, the answer would have been—see the agent, he transacts the business. That agent knew of the authority having been procured. There was no bargain to send that assent, but a requisition that before they sent the evidence of the contract they should know the fact was so.

The position that the plaintiff was not bound by his note is overthrown by Gray *v.* Foster, 10 Watts, 280. There, as in Armstrong *v.* McGhee, Addis. 261, it is ruled that acts indicating an assent of two minds are sufficient evidence of a contract. Of these there are enough to bind the plaintiff on his note.

*Armstrong*, contrà.—The reasoning of the court below is the best argument for the defendant. The company were not bound until a policy issued; 2 Watts & Serg. 545. There was ample grounds for requiring this previous assent of the trustees of the

property. By the charter, the premium notes are liens on the land of the insured, and it was for that purpose the company stipulated for it. The plaintiff had made the agent of the company his own agent to deliver this, and is bound by his neglect; 7 Watts & Serg. 348. But at all events there was no authority by an owner of the land competent to attach the lien of the note; hence the contract was not binding.

*May* 31. GIBSON, C. J.—In commercial towns, where the members of the profession are familiar with the law of insurance, actions on mere agreements to insure, whether against fire or perils of the sea, are not uncommon. They are noticed in 1 Phillips on Insurance, § 3, p. 9; but it appears that the terms of the contract must have been settled by the concurrent assent of the parties, and that nothing must have remained to be done but to deliver the policy, else the risk will not have been begun: in other words, that the agreement must have had, at some particular instant, that *aggregatio mentium* which is indispensable in the constitution of every contract. But what are the tests of its presence? In McCulloch *v.* The Eagle Insurance Co., 1 Pick. Rep. 278, the plaintiff wrote to learn the terms on which the defendant would be willing to insure his vessel on a particular voyage, and was answered that it should be done for a particular premium. He immediately sent an order for insurance on the terms proposed; but before it was written, the defendant had despatched another letter, declining to take the risk: and it was held, that at no instant had there been a simultaneous expression of assent. On a principle somewhat analogous, stands Cooke *v.* Oxley, 3 Term Rep. 653, in which it appeared, by the declaration, that the defendant had offered the plaintiff a commodity at a particular price, provided the latter would give notice of his acceptance before a particular hour of the day; that the notice had been given within the time, but that the article had not been delivered: but judgment was arrested because the plaintiff had not laid a cause of action. This last case is resolvable into the principle that either party may retract his offer while the matter is pending, just as a bid at auction may be retracted before the hammer is down. Such, too, is the principle of Routledge *v.* Grant, 3 Car. & P. 267; and it is a very practicable one where the negotiation is not carried on through the post-office. But the last case upon the point has overruled McCulloch *v.* The Eagle Insurance Company. In Adams *v.* Lindsell, 1 Barn. & Ald. 681, the defendants had offered to sell the plaintiffs a parcel of wool on terms ex-

pressed in their letter, "receiving an answer in the course of post." The letter, being misdirected, did not *go* by course of post; but the plaintiffs wrote, as soon as it was received, that they would take the wool on the terms proposed. The defendants, however, not having received the answer when they expected it, sold the wool to another. The court said, that if a bargain could not be closed by letter before the answer was received, no contract could be completed through the medium of the post-office. That if the defendants were not bound by their offer when it was accepted, then the plaintiffs ought not to be bound till after they had received a notification that the defendants had received their answer and assented to it, and that so it might go on *ad infinitum*. That the defendants must be considered, in law, as making, during every instant their letter was travelling, the same offer to the plaintiffs, and that the contract was completed by the acceptance of it: and that, as the delay in notifying it arose from the mistake of the defendants themselves, it was to be taken against *them*, that the answer had been received by course of post. I am unable to see how this conclusion can be resisted. The learned reporter of McCulloch *v.* The Eagle Insurance Company, has attempted to distinguish it from Adams *v.* Lindsell, principally on the ground that a treaty respecting insurance is necessarily subject to contingencies whilst it is forming. Undoubtedly. But the question remains; when is it entirely formed? Had their ship returned before the plaintiffs, in the former case, had answered, they would have been at liberty to decline the offer; but it follows, not that they would have been at liberty to retract an actual acceptance before the defendant had received it. The truth is, the two cases are not to be reconciled, and the conclusion is inevitable that an actual concurrence of assent, at any particular moment, is the ruling circumstance, the time of communicating it being comparatively unimportant.

But the contract before us was not negotiated by letter. The plaintiff applied to the defendant's agent for a policy on the Clinton Academy, then occupied by him; paid the requisite proportion of the premium; executed a premium note for the residue; and had a survey made according to the regulations, at his own expense: all which was laid before the company, and referred to its executive committee. The secretary subsequently wrote to the agent, requiring the plaintiff to substitute an earthenware stove-pipe collar for his sheet-iron one, and to procure the assent of the trustees of the academy, who held the title, to the contract of insurance; and saying that being duly certified that these things were done, he

would send on the policy. The plaintiff accordingly made the substitution, procured the written assent of the trustees; told the agent what had been done, and repeatedly urged him to call at the plaintiff's house, and "attend to the matter." The agent replied, that "he must first bring him that paper of the trustees;" but, being requested to call and get it, he promised to do so, yet never did.

It is clear, that the company is to be affected by the acts of its agent within the scope of his authority, as acts done by itself. It appears by the eleventh by-law, that his business was to receive applications, take surveys, and forward them, with the cash received and premium note, to the company; and it appears by the letter of the secretary, that it was the practice to negotiate the terms of insurance through him, standing in the attitude of an insurance broker. The case, then, stands thus. The company offered to effect insurance for a certain premium, on performance, by the plaintiff, of two conditions. These were performed; and the company had notice of it. The company was subsequently requested to call by its agent at the plaintiff's house, to see that the substitution was made, and receive the written assent of the trustees, which it promised to do but did not, and in the mean time the building was burned down. There was no supineness on the part of the plaintiff—at least none which had not been induced by the agent—while the company, on the other hand, was chargeable with positive negligence. Now if I promise to reward a man if he will do me a particular service, and he does it, I am bound to reward him for it, though he had not engaged to do it. The nature of a conditional promise resting on an executory consideration, was explained in Clark v. Russel, 3 Watts, 217; and it may be seen from it, that the plaintiff, having actually performed what he had been requested to do, was entitled to have the policy. The terms of the contract were matured when the company had notice that its conditions were performed; and, from that moment, the risk was incurred. It would be unconscionable in it to insist upon its own omission to execute the policy, on the ground that the resolution of the trustees had not been handed to its agent, especially as he had prevented the plaintiff from tendering it by promising to call and get it. A parol agreement for a policy, therefore, was complete.

After the decision of the Supreme Court at Washington, in The Bank of Columbia v. Patterson's Administrators, 7 Cranch, 299, sanctioned by this court in the Chestnut Hill and Spring-House Turnpike Company v. Rutter, 4 Serg. & Rawle, 16, and by many courts in our sister states, it is too late to insist that a corporation can

contract only by an instrument under its corporate seal. "When a corporation," said Judge Story, "is acting within the scope of the legitimate purposes of its institution, all *parol* contracts made by its authorized agents, are *express promises* of the corporation; and all duties imposed on them by law, and all benefits conferred at their request, are implied promises for which an action lies." It has become a familiar principle, that a corporation may, by the instrumentality of its agents, contract within the sphere of its proper functions, pretty much as a natural person may. The action in the very case of McCulloch *v.* The Eagle Insurance Co., was founded, like the present, on a corporation's parol promise; and some years ago, an action on an agreement for a policy against fire, was tried before me, and a recovery had without objection on that ground, though the counsel retained by the corporation were among the soundest lawyers at the Philadelphia bar. We say, therefore, that the agreement was complete, and that the plaintiff is entitled to recover on it to the extent of the loss, if the sum insured will reach so far; to be liquidated, if the parties cannot agree, by a writ of inquiry of damages.

Judgment of the Common Pleas reversed, and judgment *quod recuperet*, rendered by this court.