# State Fire and Marine Insurance Company *versus* Porter.

1. The memorandum of insurance and the receipt for the premium, both signed by the agent of the underwriter, formed a contract of insurance between the parties.

2. The contract of insurance, evidenced by a memorandum thereof and a receipt for the premium, both signed by the agent of the company, will be presumed to be in conformity to the ordinary form of policy used in the office where the memorandum was made.

3. If no policy is formally drawn out and executed, a suit can be maintained on the memorandum thereof, made and signed by the agent, and a recovery had for a loss by the perils of the river, which are always insured against in river policies.

4. Parol evidence of an agreement outside of the general written contract of insurance, that the policy was not to cover perils by ice, is not competent.

WOODWARD and STRONG, JJ., dissenting.

ERROR to the Court of Common Pleas of *Dauphin County.*

The opinion of the court was delivered January 3, 1860, by

READ, J.—The memorandum of the insurance and the receipt of the premium, both signed by the agent of the defendants, formed a contract of insurance between the parties. The contract would be assumed to be in conformity to the ordinary form of policy used in the office in Illinois, where the memorandum was made. If no policy was finally drawn out and executed, a suit could be maintained on the memorandum, and a recovery had for a loss by the perils of the river, which are always insured against in river policies.

On the part of the plaintiff this course appears to have been

[State Fire and Marine Insurance Co. *v.* Porter.]

pursued on the trial, without objection on the part of the defendants, and all the necessary proof of the loss by freezing up being made, and the preliminary proof put in evidence, with the abandonment, the plaintiff rested. It is clear that if no evidence had been produced by the defendants, the plaintiff had made out such a case that, if the jury believed the testimony, he was entitled to a verdict.

It was undoubtedly open to the defendants to have shown that the terms of their usual policy in Illinois did not cover such a risk or peril—but this was not attempted—which was completely in their power, and would have disposed of the whole question at once. It was also open to them to show that, by the uniform custom and usage in Illinois, such a peril or risk as freezing was not covered by the ordinary form of policy, but required an extra ice and fire risk, and an extra premium.

This course was not adopted, but parol evidence was offered to show that an agreement outside of the general contract was made, that the insurance was not to extend to perils by ice, &c. This was rejected by the court, upon the ground that it would substantially vary a written instrument. Such, undoubtedly, is the law of Pennsylvania, and it also appears to be the law of Illinois, where the contract was to be executed, and where it had been made. *Jeter* v. *Fellowes*, 8 Casey, 465. It was, therefore, properly excluded, when offered for such a purpose.

Judgment affirmed.

Mr. Justice WOODWARD and Mr. Justice STRONG dissented, the former of whom delivered the following opinion :—

WOODWARD, J.—It is apparent, that not only the court, but counsel on both sides, considered the word "insured" in the memorandum sued on, as including perils from ice. To counteract that presumption, counsel offered to prove that when the memorandum was given to the plaintiff, he was distinctly informed by the company's agent that the conditions of the policy would not cover perils from ice, and that if the boats should be frozen up or detained by ice on the voyage, the property insured would be subject to an extra charge for fire and ice risk.

The rejection of this parol evidence is the principal error complained of. The strong construction which the court gave to the word insured, as intended to cover every loss, whether from wind, waves, snags, floating ice, fire, collisions, leakage, or freezing up, is not assigned for error, but the rejection of the evidence intended to limit the force of that word is the great error assigned. The consequence of this state of the record was that before us the argument turned principally

upon the question whether the writing sued on by the plaintiff might be affected or varied by parol—the plaintiff insisting that it might not, and the defendants that it might be.

In the view we take of the matter, this discussion was misshaped. If the memorandum sufficiently indicated the perils insured against, it was not to be contradicted or varied by parol evidence, but if it contained no word that would naturally lead to the construction that frost and ice were among the perils insured against, then it was for the plaintiff, claiming for a loss from these causes, to show that by the usages of the company's agency at that place, the perils were to be understood as included in such memorandum.

In other words, the real question in the case is whether the word *insured* in this memorandum covers a loss by ice, and to make that clear we would naturally have looked for parol evidence from the plaintiff instead of the defendant.

The risk was a river risk in Illinois. Both parties contemplated a formal policy, but from the want of time to draw it, the memorandum of 2d Dec., 1856, was made in very general terms. Undoubtedly it amounts to a contract of insurance, especially when taken in connection with the receipt for the premium. It is in the nature of a valued policy—the name of the assured is mentioned—the quality and value of the wheat—the boats in which it was loaded—the voyage to be performed—the name of the company taking the risk, and the signature of the agent, are all set down. The receipt for the premium supplies the consideration, and thus a valid contract of insurance was proved. But an insurance against what perils? The perils of the river from Pekin to St. Louis, undoubtedly. But what were they? Did they include ice?

Here was the pinch! If a formal policy had been issued from that office in consummation of the contract of 2d Dec., would it have included or excluded a loss occasioned by a freezing up of the river and detention of the boats for two months?

This was a question the plaintiff would have been bound to answer, if the learned judge had not inferred it all from the word insured. The inference may be true, but we see no ground on which it could be rested. We hold that in such a memorandum the word insured means that the company have insured according to the usage and practice of their office at that place —that the party is to receive a policy such as is ordinarily issued on like premium for river navigation at that season of the year. It may be admitted the word implied indemnity against ordinary perils of the river; but is ice an ordinary peril? We make no progress in the solution of the question by changing the form of it. No judge can say, on any reason-

[State Fire and Marine Insurance Co. *v.* Porter.]

able and substantial ground, that this memorandum, in and by its very terms, imported indemnity for the cargo of wheat lodged in solid ice for two months on a voyage of less than two hundred miles.

Parol evidence was admitted to show that notice to the company was stipulated for in the event of freezing up, and that it was not given, and the learned judge tells the jury that the failure to give this notice would be a forfeiture of the contract, unless the jury were satisfied that, had the notice been given, the defendant could not have made it available by saving the property in whole or in part. That an insurance company could not in two months have saved any portion of 8000 bushels of wheat from boats frozen up in Illinois River is a proposition hard to believe, but a jury have found it to be true, and therefore this part of the case is no otherwise important than as showing that, notwithstanding the strong construction which the learned judge gave to the paper, he did not consider it as containing the whole contract of the parties.

Nor did he regard the proof of this stipulation about notice as contradictory to the writing. It was, indeed, no contradiction, but perfectly consistent with it, nor would proof of the usage of the company have contradicted the writing, even if it had established that ice was not one of the ordinary perils of the river, but was an extraordinary peril, not insured against unless specified and paid for by additional premium. The word insured would still have stood in the writing for all the parties understood by it when it was placed there. To give a meaning possibly more comprehensive than they gave to it, and then to exclude parol evidence designed to show that that was too large a construction, was to apply the salutary rule of law that forbids parol evidence to impeach writings, differently from what it has generally been applied. This was to apply the rule not to the writing, but to the judicial construction. It has never been held that judicial interpretations and presumptions may not be affected by parol evidence. It was the duty of the judge to construe the paper, and it is true that the paper was just what he construed it to be. But, as no perils were specified in it, the judicial construction should have been that it was an insurance against the ordinary perils of river navigation, and the plaintiff should have been put to the showing that these included such as caused the injury. Even, however, when the plaintiff was relieved from showing this by the presumption set up in his favor, it was competent for the defendant to show that the presumption was opposed to the fact. If, when the premium was paid and the memorandum taken, the plaintiff was not only required to give notice of being frozen up, but

[State Fire and Marine Insurance Company v. Porter.]

was told that the policy now purchased would not cover that peril without an additional premium, the jury would probably have found, as matter of fact, that the plaintiff was not insured against ice. Seeing that the evidence was rejected, we are bound to presume that they would have so found. There would then have been a proved fact to oppose judicial presumption. However sound, *a priori*, this presumption may have been, it must have given way to the inconsistent fact, for presumptions stand only in absence of established facts.

The contract of insurance is peculiarly one of good faith. If a party purchased a policy at a required premium, because it excluded a certain peril, a record ought not to be sustained which gives him a large sum of money as indemnity against that very peril. His right is to indemnity according to his contract, not beyond or against it. 5 Casey, 96.

We are, therefore, of opinion, that the learned judge was in error, when he set up a conclusive presumption that the word insured included this peril. We think he ought to have waited, before giving so broad a construction to that word, for proof of a usage in river policies on the Illinois River; but, if he was not wrong in this, and seeing that it is not assigned for error, we certainly would not reverse on this ground, we hold that the parole evidence, referred to in the first error assigned, ought to have been admitted on the part of the defendants.

Not only as a general rule are ambiguities in written instruments explainable by parol evidence of what passed at the time the instrument was made, but it is an old rule in the insurance law, that usage may be permitted to affect the construction of the policy. *Jeffries* v. *Legranada* and *Luthilier's Case*, 2 Salkeld, 443; *Gordon* v. *Merly,* and *Campbell* v. *Berdun,* 2 Strange, 1265. Park, who is one of the oldest compilers of insurance law now in use, in the edition of his work published in 1800, states the results of the early cases in these words: "In the construction of policies no rule has been more frequently followed than the usage of trade, with respect to the particular voyages or risks to which the policy relates, and it will be found that the learned judges have always called in the usage of trade as the ground upon which the construction turns." "Evidence of usage is received," says Mr. Justice THOMPSON, in *Renner* v. *Bank of Columbia,* 9 Wheaton, 581, "for the sake of ascertaining the sense of the parties by their contract made with reference to such voyage, for the custom then becomes part of the contract."

In the case of the *Schooner Reeside*, 2 Sumner, 567, Judge STORY expressed his satisfaction that the courts, both in England and America, are disposed to narrow the limits and opera-

[Pennsylvania Railroad Company *v.* The Commonwealth.]

tion of usages and customs, but he states the true and appropriate office of a usage or custom to be, to interpret the otherwise indeterminate intention of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions and acts of doubtful or equivocal character. It may also be admitted to ascertain the meaning of a particular word or of particular words in a given instrument, when the word or words have various senses.

We limited the effect of usage in a singular manner in *Coxe* v. *Hirley*, 7 Harris, 247. Usage is not to be received to defeat the essential terms of a contract, but is admissible to explain a contract which is doubtful or ambiguous, or when words are used in a different sense from their ordinary meaning. 7 Johns, 489.

It might be objected that time enough had not elapsed to establish a usage on the western rivers, to influence the construction of policies, but it is no matter how short its duration or how limited. The knowledge of it was brought home to these contracting parties. *Noble* v. *Kenney*, 1 Douglass, 510. From what we see in the evidence, we infer that the company did a large business in insuring in Illinois, and their usage in reference to ice risks would have been easily proved.

A point is made in regard to the action. It should have been brought, it is said, upon the policy which Bills swears he made out and delivered to the plaintiff on the 28th of September, 1857. This was long after the loss, and if a right of action existed, it had accrued while the contract rested in the written memorandum, and before the policy was issued.

Under these circumstances, we see no objection to declaring on the memorandum.

We would reverse the judgment, but the majority affirm it.