FRANCIS STOEHLKE *et al.*

*v.*

HENRY HAHN, Exr.

*Filed at Ottawa October 11, 1895.*

1. INSURANCE—*power of annual meeting of members of mutual com-
pany.*   The annual meeting of the members of a mutual insurance
company has no authority to pass upon claims for losses, where the
charter provides that the business and affairs of the company shall
be under the control of a board of directors.

2. SAME—*validity of directors' compromise of doubtful claim.*   The de-
cision of the directors of a mutual insurance company to pay one
whose policy had expired, but who claims a loss under an oral con-
tract between its agent and his wife as his agent for the renewal
of the policy, may be sustained as a valid compromise of a doubtful
claim, if there is not a clear legal right on his part to recover the
full amount of his claim.*

3. SAME—*charter provision as affecting validity of compromise of loss.*
The provision of the charter of a mutual insurance company, that
policies, before they become binding on the company, shall be
signed by the president and countersigned by the secretary, will
not prevent a claim under an oral agreement for insurance from
constituting a valid basis for a compromise.

4. SAME—*provision of by-law as to payment of premium may be waived.*
A by-law of a mutual insurance company providing that no insur-
ance shall be considered as binding until the premium note is
allowed and cash premiums paid, may be waived by the company.

5. SAME—*oral contract to insure—premium—compromise.*   A claim
under an oral contract for insurance, upon which no payment was

---

*On the question whether a claim must be doubtful in order to
sustain a compromise, the authorities are analyzed in a note to
*Morgan* v. *Hodges,* (Mich.) 15 L. R. A. 438.

made, cannot be held insufficient as a basis for a compromise. because of a by-law providing that no insurance shall be binding until the premium is paid.

6. PRINCIPAL AND AGENT—*ratification of unauthorized contract by principal.* A subsequent ratification of a contract made by an assumed agent has the same effect as antecedent authority.

*Stoehlke* v. *Hahn*, 55 Ill. App. 497, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

BOTSFORD & WAYNE, and J. F. SNYDER, for appellants :

Hahn was charged with notice of all the by-laws of the company and of the conditions of insurance adopted by the company, whether contained in the by-laws or in resolutions. *Miller* v. *Association*, 7 Atl. Rep. 895; *Baxter* v. *Insurance Co.* 1 Allen, 294.

Nor is it in the power of the officers of the company to waive such by-laws as constitute the essence and substance of the contract. *Murphy* v. *Insurance Co.* 7 Allen, 239; *Bremer* v. *Insurance Co.* 14 Gray, 203; *Mulray* v. *Insurance Co.* 4 Allen, 116.

Suppose Hahn had commenced proceedings against the company to compel the issuance of a policy to him; could it be seriously contended that on the showing in this record he could succeed? Tested by the following cases he could not: *Insurance Co.* v. *Paddon*, 8 Ill. App. 447; *Insurance Co.* v. *Holzgrafe*, 53 Ill. 516; *Covenant Mutual Ass.* v. *Conway*, 10 Ill. App. 348; *Rowland* v. *Insurance Co.* 18 id. 601.

Not a single element existed in the whole transaction justifying a compromise, even had the directors power to make it, which we claim they had not. *Moon* v. *Jennings*, 8 Ill. App. 168.

While it is not necessary that the claim asserted should be a legal one, it is necessary that it must have

some foundation in law or equity. *Harris* v. *Cassidy*, 107 Ind. 158.

In order that a compromise may constitute a sufficient consideration for the enforcement of an executory contract, there must have been an actual, *bona fide* claim, founded upon a colorable right, about which there was room for honest doubt and actual dispute. *Jarvis* v. *Sutton*, 3 Ind. 289.

A threat to go to law about the plainest matter and the most undisputed right would be sufficient, but the threat, to be sufficient, must be founded upon some claim, as above indicated. *Creutz* v. *Heil*, 89 Ky. 429.

But a claim of right must have some color and must be made in good faith, and not for the mere purpose of extorting money; and the promise must be made as a compromise of the conflicting rights of the parties. *Moon* v. *Jennings*, 8 Ill. App. 168.

The case of *Buffum* v. *Mutual Ins. Co.* 3 Allen, 360, in its facts strongly resembles the case at bar, and the reasons given for the conclusions reached in the opinion in that case apply with great force to the case at bar. See, also, *Hall* v. *Insurance Co.* 6 Gray, 169.

E. H. GARY, for appellees:

At the time of the fire there was a valid contract of insurance upon the property destroyed. *Insurance Co.* v. *Paddon*, 8 Ill. App. 447; *Insurance Co.* v. *McMillan*, 31 Ala. 711; *Ela* v. *French*, 11 N. H. 356; *Kelly* v. *Insurance Co.* 10 Bosw. 82; 1 May on Insurance, sec. 14, *et seq.* and cases cited; *Trustees* v. *Insurance Co.* 19 N. Y. 305; *Ellis* v. *Insurance Co.* 50 N. Y. 402; *King* v. *Insurance Co.* 58 Wis. 508.

It was within the power of the agents and directors of the company to waive, and they did waive, compliance with the by-laws. Boisot on By-laws, 16; *Insurance Co.* v. *Keyser*, 32 N. H. 313; *Campbell* v. *Insurance Co.* 37 N. H. 35; *Insurance Co.* v. *Elkins*, 124 Pa. St. 484; *Davidson* v. *Benefit Society*, 39 Minn. 303; *Fitzgerald* v. *Life Ass.* 3 N. Y. Sup.

214; *Insurance Co.* v. *Foote,* 57 Ill. 360; *Insurance Co.* v. *Stanton,* 57 id. 121; *Pratt* v. *Insurance Co.* 130 N. Y. 219.

The allowance of the claim by the board of directors and the issuing of the warrant constitute a compromise settlement, upon which an action can be maintained. 1 Parsons on Contracts, book 2, chap. 1, sec. 4, p. 438; *Stapleton* v. *Stapleton,* 1 Atk. 10; *Moore* v. *Fitzwater,* 2 Rand. 442; *Bennett* v. *Paine,* 5 Watts, 259.

This is not such a case as authorizes a court of equity to control the action of the board of directors of a corporation at the suit of a stockholder. Cook on Stockholders and Corp. Law, sec. 750; *Taunton* v. *Insurance Co.* 2 H. & M. 135.

Mr. Justice Bailey delivered the opinion of the court:

This was a bill in chancery, brought by Francis Stoehlke and others, members and policyholders in the Addison Farmers' Mutual Insurance Company, against the company and its officers and one Mathias Hahn, to restrain the payment and collection of an order for $750 drawn on the treasurer of the company in favor of Hahn. Defendant Hahn answered, all the other defendants being defaulted, and a replication being filed the cause was referred to a master, who reported recommending that the bill be dismissed for want of equity. At the hearing upon the master's report the report was in all things confirmed, and a decree was entered dismissing the bill at the complainants' costs, in accordance therewith. That decree has been affirmed by the Appellate Court on appeal, and by a further appeal the record is now brought to this court, the judges of the Appellate Court having granted to the appellants the necessary certificate of importance.

The facts disclosed by the record are, in substance, these: The Addison Farmers' Mutual Insurance Company is a mutual fire insurance company organized under a special charter, having its principal office at Addison, DuPage county, and doing a general fire insurance busi-

ness in the counties of DuPage and Cook. On the 24th day
of October, 1881, Hahn became a member of the company
by insuring therein, his policy being for the sum of $1300,
covering a barn and certain personal property, and run-
ning for the term of five years from that date. It there-
fore expired, by its terms, October 24, 1886. On Friday,
October 28, 1886, an agent of the company called at Hahn's
house, during his absence, in relation to having the policy
renewed, and had an interview with Hahn's wife, in which,
as was afterwards claimed, an oral contract was made
continuing the insurance in force until Hahn should sub-
sequently go to the agent's office and have the policy
formally issued. On October 31, 1886, and before Hahn
had been to the agent's office in relation to the insurance,
the property insured was totally destroyed by fire. Hahn
shortly afterwards filed his proofs of loss, and presented
to the company his claim for $1300,—the full amount of
his policy. The presentation of the claim seems to have
created some ill-feeling among the other policyholders,
and the matter was accordingly brought before the next
annual meeting of the members of the company, which
was held January 8, 1887. At that meeting the claim was
brought up for consideration, and was referred to a com-
mittee of five to examine and report, and the committee,
after examining it, reported recommending the payment
of $1000 in full of the claim. The meeting, on consider-
ing the report, adopted an amendment reducing the sum
to be paid to $750, and the report, as thus amended, was
adopted by a small majority of the members present.

A claim is made by the appellants that this action of
the meeting was unfairly taken, it being insisted that the
matter was called up immediately upon the reconvening
of the meeting after the noon adjournment, and before
the arrival of members who would have voted in the neg-
ative, and also that the chairman improperly refused to
receive the votes of various members who offered to vote
by proxy. But, as we view the case, it is unimportant

whether these criticisms upon the action of the meeting or its chairman are well founded or not. Afterward, on the same day, the board of directors of the company held their annual meeting, and at that meeting an order was passed, a majority of the directors present voting in the affirmative, that Hahn be paid $750 in full for his claim for loss, and that an order for that amount be drawn in his favor on the treasurer of the company. Such order was thereupon issued and delivered to him. The charter of the company having provided that the business and affairs of the company shall be under the control of a board of directors, the matter of passing upon claims for losses was committed exclusively to that board, and the annual meeting of the members had no authority in respect thereto. The action of that meeting in the premises was therefore nugatory, it being a matter exclusively within the power of the board of directors.

On February 7, 1887, the complainants filed their bill for an injunction restraining the company and its officers from paying the order thus given to Hahn. An injunction *pendente lite* having been awarded, Hahn, who seems not to have been made a defendant to the original bill, brought his suit at law against the company for the recovery of the amount of the order, and thereupon the complainants filed their supplemental bill, making Hahn also a defendant, and praying for an injunction restraining the prosecution of the suit at law. On that bill an injunction *pendente lite* was also issued as prayed for. By stipulation of the parties, the sum of $112.50 was allowed as damages on dissolution of these injunctions, and no question is raised upon this appeal as to the propriety of such allowance.

It is contended, on behalf of the appellants, that at the time of the loss by fire Hahn's policy had expired, and that he was not then a member of the company and had no insurance therein; that the order issued to him is consequently invalid, and an attempt to misappropriate the

funds of the company; that the action of the directors in ordering the payment to him of $750 in full of his claim was a mere gratuity, and was a violation of the trust reposed by the members of the company in its directors, and in contravention of its charter and by-laws, and that the payment and collection of the order should therefore be perpetually enjoined.　As bearing upon these propositions, a number of questions are argued by counsel, but we concur with the Appellate Court in the view that one of them is conclusive of the case, so that the others need not be considered.　That is, that the decision of the directors to pay Hahn $750, and issuing to him an order on the treasurer therefor, may be sustained as a valid compromise of a doubtful claim.

Counsel for the appellants insist, that as Hahn's policy had expired, and as no new policy had been issued to him or even agreed upon, he had not even an apparent claim against the company, and that there was nothing, therefore, bringing the case within the rule laid down by Lord Hardwicke in *Stapleton* v. *Stapleton*, 1 Atk. 10, and since that time re-affirmed by the courts in numerous decisions; that an agreement entered into upon a supposition of a right or of a doubtful right, though it afterwards comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for the right must always be on one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation for an agreement.　See, also, *Moore* v. *Fitzwater*, 2 Rand. 442; *Creutz* v. *Hill*, 89 Ky. 429; *Bennett* v. *Paine*, 5 Watts, 259; *Mulholland* v. *Bartlett*, 74 Ill. 58; 1 Parsons on Contracts, 439.

We are of the opinion that if there was not a clear legal right on the part of Hahn to recover $1300, (the full amount of his insurance,) there was a doubtful right, which was a sufficient foundation for an agreement of compromise.　That right was based upon the oral agree-

ment made by the agent of the company with Hahn's wife for a renewal of the insurance, she acting in the transaction as Hahn's agent. It is true, no previous agency is proved; but the evidence is clear that shortly after the transaction it was reported by her to her husband, and was then and there approved and ratified by him; and the rule is a familiar one, that a subsequent ratification of a contract by an assumed agent has the same effect as an antecedent authority.

The testimony of Mrs. Hahn as to her interview with the company's agent is, in substance, as follows: "Jacob Miller, the agent of the Addison Farmers' Mutual Insurance Company, came to our house on Friday, October 28, 1886, at about three o'clock. He wanted to know whether we wanted to insure again, and I told him yes,—of course we did; we never wanted it to run out; and I told him my husband was making fence about a mile away, and he was just on his way; he would meet him and tell him so. He said he had no time to go that way, but if I said that we wanted to insure again it would be all right. I told him I would rather have it that it should be settled, so I could know it would be sure, and he said, 'Well, if you say you want to insure again, why I will hold it until Matt comes down,'—that is, until my husband came down to Winfield, where he lived."

A daughter of Hahn, who was present at this conversation, testified, in substance, as follows: "I heard the talk between Jacob Miller, the agent of the insurance company, and my mother. Mr. Miller came and told mamma that the policy was run out, and she told him that papa was down on the farm, about a mile away, and he should go down and see him, and he said that if she said we wanted to insure again it was all right. He said if mamma said we wanted to insure again it would be all right until papa came down; everything should stay as it was until he could see papa, and papa might do it in the way he wanted it. He said the property should be

insured between that time and Sunday. In saying that he said that everything should be kept as it was, I mean that he said that it should be kept insured. I understood that the property would stay insured, because mamma said she did not want it to run out at all."

There can be no doubt, we think, that this evidence tends to establish an oral contract to keep the insurance in force until the following Sunday, when it was anticipated Hahn would see the agent and have a written policy executed and the premium arranged for. The most that can be said in favor of the appellants is, that it presents a claim of a doubtful character; but such claim, as we have seen, is sufficient to sustain a compromise contract.

Reference is made to the provision of the company's charter providing that policies of insurance, before becoming binding on the company, shall be signed by the president and countersigned by the secretary. The rule that an oral agreement for insurance may be valid is sustained by the authorities, and it is, to say the least, doubtful whether the foregoing provision of the charter can have any application to oral contracts. By its terms it applies only to policies, which are formal written contracts of insurance, and oral contracts, of course, are incapable of being signed or countersigned.

Reference is also made to the by-law of the company which provides that no insurance, original or continued, shall be considered as binding until the premium note be allowed and cash premium actually paid. All that need be said in relation to this by-law is, that the company that made and adopted it had also the power to waive it, and it cannot be held that Hahn's claim had no apparent foundation simply because the contract of insurance was entered into in violation or apparent violation of a by-law of the company.

We are of the opinion that the decree is sustained by the evidence, and it will be affirmed. *Decree affirmed.*