Rossi *v.* Firemen's Insurance Company, Appellant.

Argued September 29, 1932.  Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

244

*Edward Friedman*, with him *Charles J. Margiotti, John G. Whitmore* and *A. J. Straub*, for appellant.—The agent could not contract for the particular policy without first consulting his principal.

The agreement, if it ever subsisted, was too vague and indefinite: Etter v. Ins. Co., 54 Pa. Superior Ct. 187; McDowell v. Covert & Johnson, 73 Pa. Superior Ct. 4.

There was no valid contract existing at the time of the fire: Benner v. Fire Assn., 229 Pa. 75; Keystone Mattress, etc., Co. v. Pittsburgh Underwriters, 21 Pa. Superior Ct. 38; Ripka v. Ins. Co., 36 Pa. Superior Ct. 517; Provident Life & Trust Co. v. Ins. Co., 53 Pa. Superior Ct. 66.

*J. L. Trambley, Driscool & Gregory* and *John H. Cartwright*, for appellee, were not heard.

OPINION BY MR. JUSTICE DREW, November 28, 1932:

This action is in assumpsit upon a contract of fire insurance alleged to have been entered into November 26, 1930, by the plaintiff, Giacinto Rossi, and the defendant, Firemen's Insurance Company of Newark, New Jersey, covering plaintiff's residence in the Borough of Johnsonburg, Elk County, and the furniture and household goods therein. This property was totally destroyed by fire on November 27, 1930, but defendant refused to pay any part of the loss, claiming that no such contract existed. At the trial a verdict was returned for plaintiff in the full amout of his claim, and, motions for new trial and judgment n. o. v. having been overruled, defendant appealed from the judgment entered on the verdict.

For almost twenty years prior to 1930, one Larry G. Blose, of Ridgway, an agent for a number of fire insurance companies, acted as agent of the defendant, with full power to issue, countersign and deliver policies of insurance, and for the last fifteen years of that time kept plaintiff's property in Johnsonburg covered by insurance. He had been instructed by plaintiff to see that the property was insured at all times, and as each policy thereon expired, Blose would write another policy covering it, never consulting plaintiff as to whether the insurance was to be renewed or as to the company in which it was to be placed. He would then deliver to plaintiff the new policy, either before or after the expiration of the old.

On November 26, 1930, plaintiff's property was covered by a policy of the Hampton Roads Fire & Marine Insurance Company, of Norfolk, Virginia. On that date Blose was notified by the insurance commissioner of Pennsylvania, and by the receiver who had been appointed for the company, that it was insolvent. It is contended by plaintiff, and not opposed by defendant, that the two or three hundred policies which Blose had issued for that company were thus, by the company's insolvency and the appointment of a receiver, cancelled. Wishing to protect his customers, Blose telephoned W. D. Corbett, the general agent of the defendant, who had authority over Blose's territory, and asked leave to rewrite all his Hampton Roads business in the defendant company. Corbett inquired whether any of the business was in Johnsonburg, and was informed by Blose that some of it was. Corbett then agreed that defendant should take over all of the Hampton Roads business and dictated to Blose over the telephone a telegram to be sent by him (Blose) to the defendant's home office in Newark. This telegram was as follows:

"Gentlemen we insuring all liability Hampton Roads Fire Insurance Co written through this office in Fire-

mans of Newark NJ as of noon today will issue policies for unexpired term as soon as possible

"Larry G. Blose"

Later that evening, Blose dispatched this telegram, and sent to Corbett and the defendant letters confirming it. Early the next morning, before Blose had had time to write any policies, plaintiff's property was destroyed by fire. Some days after the fire Blose wrote out a policy on the property already destroyed and delivered it to plaintiff.

At the trial Corbett testified that, because of a large decrease in employment at Johnsonburg, he had instructed Blose, in January, 1930, not to write any more insurance for defendant on property at that place, and that Blose had said, in their telephone conversation of November 26, 1930, that none of his Hampton Roads business was in Johnsonburg. On the other hand, Blose, testifying for plaintiff, denied that he had ever been told not to accept risks at that place until after the occurrence of the loss here sued upon, and said that he had explicitly stated to Corbett over the telephone that some of the Hampton Roads risks were in Johnsonburg. Blose's version of the telephone conversation was corroborated by the testimony of another witness. The jury, in finding for the plaintiff, accepted Blose's story as the true one, and we are bound thereby.

Defendant now contends that Blose had no authority from plaintiff or defendant to make a contract of insurance, and that even assuming he had such authority no contract binding upon the parties was in force at the time of the fire. These two questions are the only ones urged on this appeal.

There is no merit in defendant's argument that plaintiff did not authorize Blose to procure insurance upon his property and replace cancelled or expired policies thereon without first consulting him. The established dealings between plaintiff and Blose, covering many years, as testified to by plaintiff, his wife, and Blose,

show beyond a doubt that the arrangement of the parties was that Blose was to see that this property was insured at all times, and issue new policies thereon as old ones expired or were cancelled. Defendant makes much of plaintiff's statements on cross-examination that at the expiration of each policy Blose would inquire of him whether he wanted a new policy. The effect of this testimony is largely destroyed by plaintiff's further statements, also on cross-examination, that when he first arranged for insurance he told Blose that he wished him to handle his insurance all the time. Taken in its entirety, plaintiff's testimony, we think, fully warranted the construction that the essence of his agreement with Blose was that the latter was to see to it that this property never lacked proper coverage by insurance. In the words of the learned trial judge, "The fact that Mr. Blose, each time he delivered a renewal policy, inquired of the plaintiff if he wanted it, in no wise disproves the understanding between them that the former was to keep the property of the latter insured, nor does it discredit the testimony of Mr. Blose that he did not consult the plaintiff before renewing a policy. Such inquiries as the plaintiff says Mr. Blose made when delivering a renewal policy amounted to no more, we think, than a polite recognition on his (Blose's) part that the arrangement as to renewals was one that might be discontinued by the plaintiff at any time."

Defendant contends, however, that even if there were such an arrangement, Blose could not, as a matter of public policy, act as agent for both parties in the making of a contract of insurance, the necessary effect of this argument being that a contract, such as the one here sued upon, which he undertook to make while acting in such dual capacity, would be voidable. This contention is unsound. Of course, on the principle that "no man can serve two masters," an agent cannot act as such for both parties to a transaction where the skill and judgment which he should exercise for the one might conflict

with the skill and judgment which he should exercise for the other: Everhart v. Searle, 71 Pa. 256; Sarshik v. Fink, 292 Pa. 256. But this rule has no application where the duties of the agent to the two principals are of such nature that there can be no conflict between his duty of loyalty to the one and his duty of loyalty to the other: German Ins. Co. v. Milford School Dist., 80 Fed. 366; Citizens State Bank v. Ins. Co., 91 Kans. 18; Bond v. Ins. Co., 83 W. Va. 105. See Quinn v. Phipps, 93 Fla. 805, 54 A. L. R. 1173; Johnson v. Ins. Co., 66 Oh. St. 6; 2 C. J. 714. In the situation presented by the facts of this case, it cannot successfully be contended that there was any conflict between Blose's duty to plaintiff and his duty to defendant. Plaintiff's direction to Blose to keep his property insured at all times for $4,000 operated, we think, as a continuing offer to those companies which Blose represented for a contract insuring his property for $4,000, the insurance to be made by such company or companies as Blose might select. This offer, of course, would not make a contract; the contract would be made by the acceptance of the offer, by Blose as agent for an insurer. Considered as plaintiff's agent, Blose's only authority was to tender to defendant his offer to make a contract of insurance. Without presuming to accept this offer on behalf of defendant, he consulted Corbett, the general agent of the company, and asked whether he might rewrite with defendant all his Hampton Roads business, which included plaintiff's policy. Corbett, on behalf of the company, expressly empowered him to do this, and thus to accept for the company plaintiff's standing offer. In the making of this contract, therefore, Blose acted, in accordance with instructions, as agent of defendant only to express assent to the offer, and, later, to write the formal instrument embodying the contract. The dual agency which existed in the instant case was not such as to affect in any way the validity of the contract: Phoenix Ins. Co. v. State, 76 Ark. 180; Todd v. German Am. Ins. Co., 2

Ga. App. 789; Sterling Fire Ins. Co. v. Comision Regu-
ladora, 195 Ind. 29; Warren v. Franklin Ins. Co., 161
Iowa 440; Dibble v. Assurance Co., 70 Mich. 1; Rose
Inn Corp. v. Ins. Co., 229 N. Y. App. Div. 349; Bond
v. Ins. Co., supra; see May v. Ins. Co., 297 Fed. 997.

Moreover, the fact that an agent has acted for both
parties in the making of a contract cannot have the
effect of invalidating the agreement so made when both
principals, with full knowledge of the material facts,
consented to the double agency: Patterson v. VanLoon,
186 Pa. 367; Valley Glass Co. v. Ins. Co., 197 Pa. 254.
See Goldsmith v. Stocker, 253 Pa. 127; Restatement of
Agency (Tentative Draft No. 1), section 37; Id. (Tenta-
tive Draft No. 7), section 613, comment 6. Such consent
clearly appears in the instant case. Of plaintiff's con-
sent there can be no doubt; it is clearly shown by the
entire course of the dealings between him and Blose over
a period of fifteen years. And Corbett, acting as general
agent for the insurance company, specifically empowered
by his company so to act, authorized Blose to rewrite his
Hampton Roads business with defendant. Corbett, an
experienced insurance agent, must have understood,
from Blose's statements to him in the course of their con-
versation, that Blose was acting without having con-
sulted his customers. As it was intended that the tele-
gram which he dictated should be sent that night,
Corbett could only have intended that it would be sent
before the policyholders were notified; in other words,
he consented for his company to Blose's acting on behalf
of the policyholders to this extent. Furthermore, it was
testified by several witnesses, without contradiction, that
it was the universal and notorious custom of insurance
agents to rewrite in solvent companies, without notify-
ing their customers, risks the policies upon which had
been rendered worthless by the insolvency of the insurer.
The evidence of assent by plaintiff and defendant that
Blose should act in this transaction for them both was
clear and satisfactory (see Rice v. Davis, 136 Pa. 439;

Marshall v. Reed, 32 Pa. Superior Ct. 60; Mitchell v. Schreiner, 43 Pa. Superior Ct. 633), and certainly was sufficient to support a finding to that effect.

Defendant further contends that no contract of insurance had been entered into between plaintiff and defendant at the time of the fire. With this argument we cannot agree. On the contrary, we are of opinion that a binding preliminary contract between these parties was entered into when Blose, on Corbett's instructions, accepted plaintiff's standing offer for such a contract. Its terms were sufficiently complete and definite. "It is not necessary that all the details of the contract that are finally to be expressed in the policy should be specified; it will be sufficient if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case": 26 C. J. 49. The offer contemplated such a contract as plaintiff had formerly entered into with the Hampton Roads company; the acceptance contemplated exactly that. There was a manifestation of mutual assent to an agreement containing all the essential elements of a contract of this nature, namely, that the subject-matter should be the property formerly insured; the risk insured against, fire; the duration of the protection, the unexpired term of the old policy; the amount of indemnity, the same as there provided. An agreement on the one side to pay and on the other to accept a reasonable premium, to be fixed in the usual and customary manner, is clearly to be inferred from the conduct of the parties. The description of the property, the amount for which it was insured, and all other facts necessary to the contract were ascertainable by reference to the old Hampton Roads policy, or to the records of that policy in Blose's office, and that was obviously the way in which they were intended to be ascertained. Even the specific terms and conditions of the contract were ascertainable, since a contract of insurance entered into without the issuance of a policy is to be regarded as made upon the terms and subject to

the conditions contained in the ordinary form of policies used by the company (see State F. & M. Ins. Co. v. Porter, 3 Grant 123; Eureka Ins. Co. v. Robinson, Rea & Co., 56 Pa. 256; Lipman v. Ins. Co., 121 N. Y. 454), or, to put it more accurately so far as the instant case is concerned, upon the terms and conditions contained in the standard form of policy provided by our statute: see Hicks v. Assurance Co., 162 N. Y. 284. The silence of the telegram as to the rate and amount of the premium was not fatal, for an agreement to pay a reasonable premium will be implied (Queen Ins. Co. v. Hartwell Ice Co., 7 Ga. App. 787; Smith & Wallace Co. v. Ins. Co., 68 N. J. L. 674), and, as stated above, such an agreement is here clearly to be inferred; nor, by the same cases, was it necessary that the premium be paid before the loss occurred.

The obvious intention, appearing on the face of the telegram, was that it should act as a memorandum evidencing the existence of temporary or preliminary contracts of insurance between the defendant and certain policyholders in the Hampton Roads company, such contracts to be in force until written policies were issued. Such a preliminary contract, evidenced, as here, by a written memorandum or binder, is valid and effective, even though a loss occurs before a policy is issued: State F. & M. Ins. Co. v. Porter, supra; Queen Ins. Co. v. Hartwell Ice Co., supra; Smith & Wallace Co. v. Ins. Co., supra; Lea v. Ins. Co., 168 N. C. 478. See Patterson v. Ins. Co., 81* Pa. 454; 26 C. J. 48.

In view of what was said in Munhall v. Travelers Ins. Co., 300 Pa. 327, with regard to the effect of the Act of May 17, 1921, P. L. 682, section 317, upon an oral contract of life insurance, we deem it proper to consider the effect of that section upon the contract in the instant case, although that question has not been raised by the parties. That section provides as follows:

"Policies of insurance, made or entered into by any stock or mutual insurance company, may be made either

with or without the seal thereof, and they shall be subscribed by the president, or such other officer as may be designated by the directors or trustees for that purpose, and shall be attested by the secretary or other designated officer, and, when so subscribed and attested, shall be obligatory on the company."

Whatever may be the effect of this statute on other oral contracts of insurance, we think it displays no intention to invalidate contracts of insurance, whatever their form, which are intended to be in effect only until a formal policy may be executed. No principle of the common law requires that contracts of insurance, any more than other simple contracts, need be in writing, and, therefore, in the absence of charter or statutory regulations forbidding them, oral contracts of insurance are valid: Hamilton v. Ins. Co., 5 Pa. 339; Walker v. Ins. Co., 56 Me. 371; Sanborn v. Ins. Co., 16 Gray (Mass.) 448. See Levan v. Ry. Co., 279 Pa. 381; Washington, etc., Ins. Co. v. Burton, 287 U. S. 97; 32 C. J. 1113; 15 A. L. R. 996. We see nothing in the section above quoted to warrant an interpretation that its effect is to deprive agreements such as the one here involved of binding force. Similar provisions in statutes of other states have uniformly been held not to prevent the formation of such contracts, whether found in special acts incorporating insurance companies (Sanborn v. Ins. Co., supra; First Baptist Church v. Ins. Co., 19 N. Y. 305; see Stoehlke v. Hahn, 158 Ill. 79; New England F. & M. Ins. Co. v. Robinson, 25 Ind. 536) or in general statutes, such as the Act of 1921, supra; Commercial Mut. Marine Ins. Co. v. Union Mut. Ins. Co., 19 How. (U. S.) 318; Walker v. Ins. Co., supra; Royal Indemnity Co. v. Goodman, 32 Oh. App. 316; see Goodhue v. Ins. Co., 175 Mass. 187; King v. Ins. Co., 195 Mo. 290; Dayton Ins. Co. v. Kelly, 24 Oh. St. 345. In some of these cases the basis of decision was that statutes of this kind are intended merely to point out a manner in which formal policies may be executed, and are not meant to forbid the making of binding contracts other than those embodied in formal poli-

cies (see Walker v. Ins. Co., supra; Sanborn v. Ins. Co., supra; First Baptist Church v. Ins. Co., supra), while in others the ground taken was that statutes like these evidence no intention to invalidate temporary and preliminary contracts, such as the one here involved: see Commercial Mut. Marine Ins. Co. v. Union Mut. Ins. Co., supra; Goodhue v. Ins. Co., supra. Our own case of Patterson v. Ins. Co., supra, lends support to the latter view, for in that case, where an insurance company had been organized by an act of the General Assembly containing a provision similar to that of the Act of 1921 above referred to, this court, though affirming an entry of nonsuit for want of sufficient evidence to establish a contract, was careful to state: "It is not intended to say that an insurance company may not be bound by a parol insurance before the policy is made out and delivered. There may be such a contract to protect the insured in the interim between the taking of the risk and payment of the premium and the issuing of the policy." At all events, it is apparent that the provisions of this section were not intended to be applicable to a mere temporary and preliminary contract of insurance, such as the one now before us, and we so hold. So far as Munhall v. Travelers Ins. Co., supra, may have held otherwise, it is no longer law.

Nor do sections 522 and 523 of the Act of 1921, supra, which provide that no stock fire company shall issue policies other than those of the standard form therein set forth, show an intention to invalidate temporary and preliminary contracts, whatever may be their effect on other oral contracts of insurance, as to which we now express no opinion. Other jurisdictions have held that such provisions do not affect contracts of the kind here involved (National Liberty Ins. Co. v. Milligan, 10 F. (2d) 483; Lea v. Ins. Co., supra; Milwaukee Bedding Co. v. Graebner, 182 Wis. 171; see Hicks v. Assurance Co., supra; Mass. Bonding & Ins. Co. v. Vance, 74 Okla. 261), and with their conclusion we are fully in accord.

Judgment affirmed.