## Keystone Mattress and Spring Bed Company v. Pittsburg Underwriters of Pennsylvania, Appellant.

*Insurance—Fire insurance—Parol contract—Agent.*

There may be a parol contract of insurance to protect the insured between the taking of the risk and the issuing of the policy, but the company must have made the contract, and it must be clearly established. When made by an agent his power to bind the company must clearly appear. Such a contract cannot be sustained where it appears that it was made by the clerk of one company assuming to act for another company without any authority whatever.

To constitute a verbal contract of insurance the minds of the parties must have met upon all the essentials of the contract, the testimony must make clear the subject-matter of insurance, the amount and limits of the risk, including its duration in point of time, and extent in point of hazard assumed, the rate of premium, and generally all the circumstances which are peculiar to the contract, and distinguish it from every other so that nothing remains to be done but to fill up the policy and deliver it on the one hand and pay the premium on the other. A recovery upon such a contract cannot be sustained where the testimony is silent as to the rate of premium and the period of time during which the insurance was to continue, and the only witness for the plaintiff testified that the insurance was on stock alone, while the plaintiff claimed for loss on machinery, office furniture and fixtures in addition.

Argued April 17, 1902.    Appeal, No. 104, April T., 1902, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1899, No. 250, on verdict for plaintiff in case of Keystone Mattress and Spring Bed Company v. Pittsburg Underwriters of Pennsylvania.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Reversed.

Assumpsit on a contract of insurance.    Before BROWN, J.
The facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff for $810.50.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*James T. Buchanan*, with him *James M. Garrison*, for appellant.—The evidence was insufficient to submit to the jury: Mechanics' Bank v. New York, etc., R. R. Co., 13 N. Y. 633 ; Edwards v. Dooley, 120 N. Y. 540 (24 N. E. Repr. 827) ; People's Ins. Co. v. Paddon, 8 Bradwell (Ill.), 447 ; Johnson v. Connecticut Fire Ins. Co., 84 Ky. 470 (2 S. W. Repr. 151) ; Patterson v. Benjamin Franklin Ins. Co., 81 Pa. 454.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellee.

OPINION BY W. D. PORTER, J., July 10, 1902 :

The plaintiff declared upon a parol contract of insurance, alleged to have been made between his agent Lang and the authorized agent of the defendant, " that a fire risk should be and then was on the said 7th day of June taken to be and become binding from June 7, 1899, at noon, until June 7, 1900, at noon, and that a formal policy of insurance expressing the agreement so entered into should be issued and delivered as of June 7, 1899, as soon as the same could be prepared and formally executed ; " and by the terms of the said agreement said insurance was to cover, in connection with the other companies having insurance, the stock, machinery and office furniture in the building occupied by the assured.   The statement further alleged that the property was destroyed on the morning of June 8, 1899, and that the defendant thereupon refused to deliver the policy. The plaintiff at the trial attempted to establish the parol contract of insurance by the testimony of his insurance broker, Lang, which was in substance as follows : Lang, in the afternoon of June 7, 1899, called up the office of the Teutonia Insurance Company by telephone, and the call was answered by Eggers, who at the time was the policy clerk of that company ; the Teutonia was one of five local companies which composed the Pittsburg Underwriters.   Lang asked Eggers if the Pittsburg Underwriters would issue a policy of $1,500 on the Key-

stone Mattress & Spring Bed Company, in Allegheny, specifically stating that the insurance should be on stock; Eggers replied that he did not know, he would have to inquire; that was the end of the first conversation. As to the subsequent conversation Lang testified in this language : " In the due course of events, I presume he called up the different companies or the manager of the company, and reported back to me, stating that they would carry a risk of $1,500 and for me to send the forms. I said, " My clerk is away to-day, and I will mail them to you. You will get them in the morning, but cover it to-night," and he said, " All right, we will."` Lang that evening mailed the forms, a description of the property to be insured. In making out the description of the property to be covered he included the machinery and office furniture, fixtures and supplies, as well as the stock; this he testifies explicitly was a mistake, that the stock only was to be covered and the insurance limited to it in accordance with the terms of the parol contract. Eggers received this form the next morning and taking one of the printed forms from a lot which had already been signed by Gerwig, the regularly appointed agent, he started to fill it up, but this work never was completed. The plaintiff called upon the defendant to produce this paper and offered it in evidence. It shows an incomplete paper, containing no reference to what property was intended to be insured. After the property was known to be on fire Lang went to the office of the Teutonia Insurance Company and demanded the policy, and they declined to issue it. The plaintiff stands upon the parol contract of Eggers, if he ever made one.

The Pittsburg Underwriters was an association of five local insurance companies, one of which was the Teutonia. The association employed a manager and appointed agents. C. W. Gerwig was a regularly appointed agent of the association, and was at the same time secretary of the Teutonia Insurance Company, in the office of which latter company his business as an agent for the Pittsburg Underwriters was transacted. Eggers was employed by the Teutonia Insurance Company as a policy clerk and general office man. He had authority to renew policies of the Teutonia Insurance Company, but had no authority to make a new contract of insurance for that or any other company. He had no authority to make contracts of insurance for

the Pittsburg Underwriters, nor was he employed by that com-
pany.   He had no actual authority to make the oral contract
upon which the plaintiff relies.   The testimony of the witness
Lang might at first seem to indicate that he had had such a
course of dealing with Eggers as to indicate that the Under-
writers had permitted Eggars to exercise an apparent authority
to make contracts of this nature, but a careful analysis of that
testimony must lead to a contrary conclusion.   There is noth-
ing in Lang's testimony from which a jury ought to have been
permitted to find that the Pittsburg Underwriters ever knew
that Eggers had ever made any contract of insurance, either
oral or written, as their representative.   The witness Lang
evidently thought that every clerk in the office of the Teutonia
Insurance Company had authority to make an oral contract of
insurance for every other company of which Mr. Gerwig was
an agent, for he testified as follows : "Q. You knew he (Eg-
gers) was a clerk of the Teutonia Insurance Company? A. Yes,
sir.   Q. You knew that he had nothing to do with the Pitts-
burg Underwriters?   A. Just the same as any clerk in any
office has jurisdiction over all the companies in that office,
as far as his authority goes ; but in this case he has shown
that he had more than the average.   The court: Q. State
if it is a fact that you had other relations with Mr. Eggers
in the insurance line of business.   A. Yes, sir ; every day
most.   Q. What was the nature of those business relations
that passed between you?   A. Asking him to write certain
insurance for us and delivering policies to us, or sending poli-
cies down to me that they wrote for me or I will write for
them.   Q. And quoting risks?   A. Yes, sir.   And there is
one hundred and one ways that I cannot explain, peculiar to
our business, but the facts I want to give you as plainly as
I can.   Q. You knew he was simply a policy clerk?   A. He
was a clerk in the office ; I don't know what title he had."
It was not for this witness to say whether the Underwriters
had permitted Eggers to so deal with their business as to
render the association liable upon contracts entered into by
him in their behalf.   The witness ought to have given the
facts ; the " one hundred and one " things which he could not
explain could have nothing to do with the determination of
this issue.   The facts which he gave were not such as to warrant
the court in submitting to the jury the question of the authority

of Eggers to bind this defendant by a parol contract of insurance. "There may be a parol contract of insurance to protect the insured between the taking of the risk and the issuing of the policy, but the company must have made the contract, and it must be clearly established. When made by an·agent, his power to bind the company must clearly appear:" Patterson v. Benjamin Franklin Insurance Company, 81* Pa. 454.

Even if there had been evidence of authority in Eggers, the evidence produced by the plaintiff would still have been insufficient to warrant a recovery. To constitute a verbal contract of insurance the minds of the parties must have met upon all the essentials of the contract. The testimony must make clear the subject-matter of insurance, the amount and limits of the risk, including its duration in point of time and extent in point of hazard assumed, the rate of premium, and generally all the circumstances which are peculiar to the contract, and distinguish it from every other so that nothing remains to be done but to fill up the policy and deliver it on the one hand and pay the premium on the other: Patterson v. Benjamin Franklin Insurance Company, supra; Johnson v. Connecticut Fire Insurance Company, 84 Ky. 470, 2 S. W. Repr. 151; People's Insurance Company v. Paddon, 8 Bradwell, Ill. 447: The testimony of Lang was that this risk was specially hazardous, but there was not one word in his testimony as to the rate of premium or the period of time during which the insurance was to continue. The testimony of Lang was directly contradicted by Eggers, but even if every word of it was true it was not sufficient to warrant a recovery by the plaintiff.

Had all the terms of a parol contract been agreed upon by an agent authorized to bind the defendant association, this judgment would still have to be reversed. The right of the plaintiff to recover depended absolutely and entirely upon the testimony of the witness Lang. He testified that the policy which was to be issued by the defendant was to cover the stock only; yet the plaintiff has here been permitted to recover not only for the loss on stock but for that upon machinery and office furniture and fixtures in addition. If this judgment is permitted to stand the plaintiff will, therefore, recover for the loss of property upon which there was not, under the evidence, even an application made for insurance.

The judgment is reversed.