Harris, Appellant, *v.* Meyers (et al., Appellant).

Argued March 11, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*J. Webster Jones,* for Coal Operators Casualty Co., appellant.

*Frank R. Ambler,* for claimant, appellant.

*Paul H. Ferguson,* for Philip Sache et al., appellees.

Opinion by Hirt, J., April 21, 1947:

Philip Sachse made extensive repairs and additions to a building in Philadelphia under a general contract with the owner. He sublet the pointing of the brickwork to Theodore Rippy. John W. Harris, claimant's husband, was Rippy's employee. On October 28, 1942, Harris, in the course of his employment, fell from a scaffold and died from injuries the following day. Claimant thereupon filed two separate claims for compensation for her husband's death from accident, one against Philip Sachse, the general contractor, and the other against Theodore Rippy, the subcontractor. Sachse defended on the ground that Rippy had secured workmen's compensation insurance as required by the written contract between them, and that this insurance was in force at the time of the accident. The two claims were consolidated and were heard together. It was conceded that claimant was entitled to recover from one defendant and his insurance carrier, or the other. The referee ultimately dismissed the claim in the proceeding against Sachse and his insurance carrier, but made an award of compensation in claimant's favor against Theodore Rippy and Coal Operators Casualty Company, as his carrier. These orders were affirmed by both the board and the lower court. Coal Operators Casualty Company has appealed from the judgment entered on the award in No. 38, and claimant, out of caution, has appealed from the refusal of her claim as to Sachse and his carrier in No. 37. The question of law, controlling in both appeals, (determining whether Sachse as statutory employer or Rippy as subcontractor is liable. Amendment of June 21, 1939, P. L. 520, §1 [art. III, §302(b)], 77 PS 462. *Byrne v. Hitner's Sons Co.,* 290 Pa. 225, 138 A. 826; *Capozzoli v. Stone & Webster Eng. Co.,* 352 Pa. 183, 42 A. 2d 524) is whether there is competent

evidence sufficient to support the finding that Coal Operators Casualty Company assumed liability on a binder from the date of Rippy's application for workmen's compensation insurance.

By the terms of his contract with Sachse, Rippy agreed to furnish a certificate of workmen's compensation insurance before his entry on the premises as subcontractor. In the morning of October 27, 1942, Rippy telephoned the office of William F. Miller, an insurance agent and broker in Philadelphia. He talked with Helen Malone, Miller's secretary and applied for a workmen's compensation policy. Rippy was not acceptable to any of the companies which Miller represented because of the fact that he is a Negro. Charles T. Easterby, as general agent of Coal Operators Casualty Company, was known to accept such risks and Miller as broker had placed insurance through Easterby's office on prior occasions. Miss Malone called Easterby's office, ordered a workmen's compensation policy of insurance for Rippy and gave the necessary data over the phone. Miss Malone's testimony is to the effect that the application was accepted on behalf of Easterby by the woman in his office who answered the call and that the latter also agreed that the insurance was immediately binding. Miss Malone did not identify the clerk in Easterby's office with whom she talked nor did she inquire as to the extent of the clerk's authority. Easterby identified the woman who talked with Miss Malone as his telephone girl and testified that she was wholly without authority to assume insurance liability on a binder or otherwise on his behalf. In the late afternoon of October 27, 1942, Miss Malone reported to Sachse's superintendent that an insurance binder had become effective as to Rippy and on the strength of that representation Rippy and his men were allowed on the premises the following day for the performance of the work. Miss Malone informed Rippy that she would have to have his check

for $20.17 as a down-payment on the premium. Rippy did not deliver his check in that amount until October 29, 1942, one day after the accident and on the day when Harris died of his injuries. The check was immediately endorsed by Miller and was sent to Easterby but was returned by him to Miller.

In the proceeding before the compensation authorities, and in the appeal to the lower court, it was not disputed that Rippy's application for insurance was made to Easterby as agent of a specific principal, to-wit: Coal Operators Casualty Company. Appellant's statement of questions involved in this appeal, by necessary implication, concedes that any valid oral interim insurance contract entered into on behalf of Easterby as agent, became the obligation of Coal Operators Casualty Company. The issues were tried below on that assumption and there is no contention here that Coal Operators Casualty Company is not liable because not identified as the insurance company in which liability was assumed by Easterby's clerk.

The following findings of fact, adopted by the board, raise the legal principles which rule this appeal: "2. That the said defendant, Theodore Rippy, was covered with Workmen's Compensation Insurance by the Coal Operators Casualty Company." "12. That on October 27, 1942, one day prior to the accident, Charles Easterby and Company, general agents for the Coal Operators Casualty Company, placed a binder of Workmen's Compensation Insurance covering Theodore Rippy for any claims against him under the Workmen's Compensation Law in connection with Theodore Rippy's sub-contract with Philip Sachse, which binder was in force at the time of the accident to the claimant's decedent on October 28, 1942." "13. That the said binder was issued by telephone at the request of William F. Miller, insurance broker, in accordance with a practice in effect at the time and for many years prior thereto."

In the light of the judgment on the award, in determining whether these findings are supported by the evidence, claimant must be given the benefit of the most favorable inferences from the testimony. *Dosen v. Union Collieries Co.,* 150 Pa. Superior Ct. 619, 29 A. 2d 354. The real difficulties in this case were raised by the issues of fact. These were exclusively for the compensation authorities. And we may not substitute our judgment for that of the referee and the board nor our estimate of the credibility of witnesses, for theirs. Regardless of whether we agree with the above findings we are bound to recognize that there is competent and substantial evidence sufficient to sustain them and these findings, affirmed by the board, cannot be disturbed by us (*Kasman v. Hillman C. & C. Co.,* 149 Pa. Superior Ct. 263, 27 A. 2d 762) even though there is other competent evidence which if believed would have relieved this defendant from liability. *Osterritter v. Moore-Flesher Co.,* 150 Pa. Superior Ct. 236, 27 A. 2d 262.

A binder has been defined to be: "A written instrument, used when a policy cannot be immediately issued, to evidence that the insurance coverage attaches at a specified time, and continues, . . . until the policy is issued or the risk is declined and notice thereof given": Webster's Int. Dict. 2nd Ed. Binders are commonly evidenced by binder certificates in writing or by written receipts. But in the light of general present-day practices, any definition of a binder must be revised to include oral contracts of interim insurance as well. Insurance is an indemnity contract and, except when prohibited by statute, may rest upon a parol contract without delivery of a policy to the insured. *Levan v. Pottstown P. Ry. Co. et al.,* 279 Pa. 381, 124 A. 89. This is the modern rule. Referring to oral and other contracts of insurance, whatever their form, intended to take effect only until a formal policy may be executed or the risk refused, our Supreme Court has said: "No principle

of the common law requires that contracts of insurance, any more than other simple contracts, need be in writing, and, therefore, in the absence of charter or statutory regulations forbidding them, oral contracts of insurance are valid: Hamilton v. Ins. Co., 5 Pa. 339; Walker v. Ins. Co., 56 Me. 371; Sanborn v. Ins. Co., 16 Gray (Mass.) 448. See Levan v. Ry. Co., 279 Pa. 381; Washington, etc., Ins. Co. v. Burton, 287 U. S. 97; 32 C. J. 1113; 15 A. L. R. 996": *Rossi v. Firemen's Insurance Co.,* 310 Pa. 242, 252, 165 A. 16. Of course there must be a meeting of the minds to result in the temporary assumption of such insurance risk and therefore the parties must have in contemplation the terms to be incorporated later in the written policy. *Rossi v. Firemen's Insurance Co.,* supra. There could have been no misunderstanding on that ground in the present case. The items of information upon which workmen's compensation coverage is based are few; even the premium to be paid is an estimate, subject to adjustment on a payroll audit at a later date. The necessary data was supplied by telephone in this case and, since indemnity of an employer against statutory liability from accidental injury of employees was intended, it is conclusively presumed, in the absence of testimony on the subject, that the parties had in contemplation an oral contract upon the terms and conditions of a standard form of workmen's compensation policy in this State. *Eureka Insurance Co. v. Robinson,* 56 Pa. 256; *Rossi v. Firemen's Insurance Co.,* supra, (pp. 250, 251) ; 1 Goldin on Insurance, 2nd Ed., §219.

A modern insurance agency deals in a wide variety of detail, with many forms of insurance and casualty contracts. In ordinary course it would be physically impossible for an insurance agent such as Easterby, himself, to attend to all of the details, e. g., of scrutinizing each application to determine whether the risk is acceptable, to determine the rates, to write the policy on the proper form and deliver it, to collect the premium or

extend credit for it. Clerks are appointed for these and many other purposes. And it must be assumed that an insurance company, in appointing a local agent, contemplates that the authority to assume risks in its behalf in the regular course of its business will be shared by designated employees in his office. The status of an employee to whom the agent had delegated such authority is that of subagent whose acts, in ordinary course, are as binding on the company as if done by the agent himself. *McGonigle v. Susquehanna F. Ins. Co.*, 168 Pa. 1, 31 A. 868; *Franklin Fire Ins. Co. v. Bradford,* 201 Pa. 32, 50 A. 286; *Isaac et al. v. D. and C. Mut. F. Ins. Co.*, 308 Pa. 439, 162 A. 300; Restatement, Agency, §§79, 80. As to a general agent of an insurance company the maxim *delegatus non potest delegare* does not apply. *Bodine et al. v. Exchange Fire Ins. Co.,* 51 N. Y. 117. In *Barone v. Aetna Life Ins. Co.,* 260 N. Y. 410, 183 N. E. 900, the almost universally accepted rule is thus discussed: ". . . the business of an insurance agent, either in issuing policies or soliciting insurance, is not of such a discretionary or personal nature that it cannot be delegated. It is held to be a matter of common knowledge, of which the company is, of course, aware, that the insurance business is carried on by agents largely through subordinates; that it cannot properly be carried on in any other way, and that, therefore, the ordinary local but so-called general agent may, as a matter of implied consent, appoint subagents and subordinates whose statements, acts, knowledge, or receipt of notice, within the ordinary course of business will bind the company." Cf. *Rommel v. New Brunswick Fire Ins. Co.* (Minn.) 8 N. W. 2d 28; *Goode & Co. v. Georgia Home Ins. Co.* (Va.) 30 L. R. A. 842; *Pastucha v. Roth,* 290 Mich. 1, 287 N. W. 355; *Miller v. United Pacific Casualty Ins. Co.* (Wash.) 60 P. 2d 714; 29 Am. Jur., Insurance, §§97, 828.

In general, one dealing with an insurance agency *in ordinary course,* need not concern himself with the

extent of the authority of an employee in the office of the agent who undertakes to act for the agent. The apparent authority with which such employee is clothed by the agent renders him and his principal liable regardless of the actual limits of the authority of the employee. Restatement, Agency, §8. For this reason, when the issue is raised there is no burden, under ordinary circumstances, on one to prove the extent of the authority of an employee in the office of a general insurance agent with whom he deals. Interim coverage between an application for insurance and the delivery of the policy or rejection of the risk is within the ordinary course of an insurance business. And such binder agreed to by an employee of the agent, upon apparent authority, becomes the obligation of the company represented by the general agent. Couch on Insurance, §526; 16 Appleman on Insurance, §8702.

In modern practice much of the business of a general insurance agent is conducted over the telephone. New insurance in various forms as well as increased coverage on existing insurance is commonly ordered by telephone and if an application is accepted by a clerk who undertakes to speak for the agent, an enforceable insurance contract results. The fact therefore in the present case that the transaction was consummated over the telephone and that Miller's clerk was unable to identify the employee of Easterby with whom she talked, is of no moment. A business establishment may be bound by the response of an unidentified person who answers the telephone on its behalf under presumptions which arise from transactions of business by telephone. *Swing v. Walker*, 27 Pa. Superior Ct. 366. The principle was applied in *Wahl v. State Wkmn's Ins. Fund et al.*, 139 Pa. Superior Ct. 53, 11 A. 2d 496, a case which (regardless of differences in the burden of proof) rules this phase of the present appeal.

It is not necessarily fatal to claimant's right of recovery that a deposit on the premium did not accom-

pany the application for the insurance. In general the validity of a binder or of any insurance contract is not dependent upon prior payment of the premium. Cf. *Levan v. Pottstown P. Ry. Co. et al.,* supra (279 Pa. 381). There is testimony that an agreement between Miller and Easterby as to such deposits related to part payment of a premium prior only to delivery of the written policy. And despite Easterby's testimony to the contrary, there is evidence that on prior occasions Easterby's office agreed to a binder on Miller's application without a premium deposit prior to the delivery of the policy.

*Keystone M. & S. Bed Co. v. Underwriters,* 21 Pa. Superior Ct. 38, relied upon by appellant, is clearly distinguishable from the present case. There an application was made to a clerk in the office of Teutonia Insurance Company for fire insurance, immediately effective, in an association of five companies (of which Teutonia Insurance Company was one) which wrote insurance in the name of Pittsburgh Underwriters. The clerk accepted the risk on an oral binder on behalf of Pittsburgh Underwriters. But the clerk was not a subagent of the other four insurance companies and did not have authority, apparent or actual, to bind them on an interim contract of insurance. The erroneous assumption that the clerk acted upon sufficient authority was that of the applicant, and this court properly held that no valid binder had been entered into.

Accepting, as we must, the findings of the compensation authorities on the issues of fact, we have no doubt as to claimant's right of recovery against Rippy and Coal Operators Casualty Insurance Company, his carrier, as a matter of law.

The order in No. 37, October Term, 1947 and the judgment in No. 38, October Term, 1947, are affirmed.