## Kovler, etc., v. Easterby et al.

*Herman J. Obert* and *Walter B. Gibbons*, for plaintiff.

*J. Webster Jones*, for defendant Easterby.

*Rawle & Henderson*, for defendant Employers Mut. Casualty Co.

*Nathan I. Miller*, for additional defendant.

ALESSANDRONI, J., July 16, 1951.—This is an action in assumpsit instituted by Harry Kovler against Charles T. Easterby and the Employers Mutual Casualty Company to recover damages for the failure of Easterby to deliver a certain contract of public liability insurance which he had undertaken to do, and for the failure of Employers Mutual Casualty Company to defend against and pay certain claims which arose under said policy. Defendants joined J. J. Kattleman as an additional defendant.

At the conclusion of plaintiff's case a compulsory nonsuit was entered in favor of all defendants, whereupon plaintiff filed the motion to take off the nonsuit now before this court.

The record establishes that plaintiff was engaged as a common carrier by motor vehicle, operating under certain certificates from the Public Utility Commission and the Interstate Commerce Commission. The contracts of public liability insurance which he had purchased as required of common carriers had been canceled, and he requested his insurance broker, J. J. Kattleman, to procure the necessary replacements. This request was oral and was made on or about August 13, 1941. He specifically required coverage for personal injuries of $5,000 to $10,000 and coverage for property damage up to $5,000.

Mr. Kattleman, a licensed broker, knew plaintiff was a common carrier and knew the insurance requirements of common carriers. He immediately un-

dertook to secure a policy similar to the one which had been canceled.

In the course of his undertaking Mr. Kattleman went to the offices of defendant Charles T. Easterby, believing him to be the general agent of defendant company, Employers Mutual Casualty Company. The evidence would seem to establish that Mr. Easterby's conduct led Mr. Kattleman to that belief. The record clearly shows, however, that Easterby was a broker and not a general agent.

The meeting in Mr. Easterby's office occurred on August 15, 1941, at which time Kattleman gave Easterby an order for the required insurance. While sitting at his desk Easterby worked out the rate, placed a telephone call to the Employers Mutual Casualty Company and stated to Mr. Kattleman that his client Kovler was covered by the required insurance which would be considered binding as of August 15, 1941, even though the policies would not be prepared and physically delivered for a few days.

The worksheet which Mr. Easterby prepared simultaneously and handed to Mr. Kattleman is in evidence, and it is established that it is in Mr. Easterby's handwriting. This corroborated Mr. Kattleman's testimony that Easterby said to him the policy would be issued by defendant, Employers Mutual Casualty Company. The worksheet also disclosed the effective date to be August 15, 1941, the term to be a period of 12 months, the name of issuing company, the amount of the premium, the method of paying the premium, and the date of September 15, 1941, as the day on which the first installment would be due.

Kattleman specifically testified that he impressed upon Easterby the fact that coverage had to start on August 15, 1941, because Kovler was a common carrier and his existing policies of insurance expired on that date. With equally unequivocal testimony Kattleman

stated that Easterby told him that the coverage was bound, pending the actual issuance of the policy. Mr. Kattleman then advised Kovler that the insurance in the required amount was in effect as of August 15, 1941.

At approximately 3 a.m. on August 19, 1941, one of plaintiff's trucks, which should have been covered by these policies of insurance, was in an accident near Paoli, Pa. This accident was reported to the insurance company promptly but the company refused to defend on the ground that its policy was not in effect at that hour on that day. Accordingly, plaintiff defended and was required to pay a verdict and fees for services in the aggregate amount of $3,377.80. It is to recover that amount that this action was instituted.

The claim against Mr. Easterby is predicated upon his breach of contract in failing to deliver the policy of insurance which he said was bound and which he agreed to do. The action against the insurance company is in the alternative to a certain extent, because it is based upon a breach of contract predicated upon the insurance company's refusal to defend the action and pay the verdicts. The insurance company defended on the ground that Easterby was not a general agent, had no authority to issue a binder, and that it had not received an order for insurance from Mr. Easterby until the afternoon of August 19, 1941, which was subsequent to the happening of this accident in Paoli, Pa. Mr. Easterby also pleaded that he was not a general agent and denied that he represented himself as such. He also denied that he told Kattleman a binder was in effect, but, on the contrary, that no policy would issue until a down payment was made and a note was executed. These defenses of course were not established because of the granting of the nonsuit.

Plaintiff, in addition to Kattleman's and his own testimony, called Mr. H. B. Root, who was manager of the Employers Mutual Casualty Company at the time this policy was alleged to have been issued. The original policy could not be produced. There was some evidence that it had been delivered to Easterby but it is conceded that it was never delivered either to Kattleman or plaintiff. After the accident occurred, Easterby made equivocal statements to Kattleman evading responsibility, and at first advising him that the policy had not yet been received, and then disclaiming liability. However, the company's file copy of the policy was produced and is admittedly an exact duplicate of the original. The records of the company show that a policy was issued, as requested, in the amounts and with the coverage described, to Harry Kovler, and the date of issue is alleged to be August 19, 1941. The agent is named as Charles T. Easterby and Company. However, where the form of the daily report provides for a policy period or the effective date we find that the dates have been subject to erasure. As corrected, the policy reads, from August 19, 1941, to August 19, 1942, but the place where the two 9's appear has been subject to erasure and the 9's do not appear in carbon but in ribbon type. Moreover, the printed form has an effective hour as 12:01 a.m., which was three hours before the accident. Here again, the carbon copy of the daily report in ribbon type and not in carbon has this hour deleted and 12 o'clock noon inserted.

It is clear that the date of issue on all the instruments offered in evidence is the date on which these documents were typed and prepared. It is not inconceivable, and affirmatively, it is to be strongly inferred from this record, that policies were typed several days after their effective date. Moreover, in examining the policy itself, we find that there is an endorsement prepared for the Commissioner of Motor Vehicles for Maryland,

in which again the effective date is subject to erasure of the digit 9 contained in the date of August 19th, but the effective hour had not been changed. Then, surprisingly enough, we find in the record an amazingly unusual self-serving declaration consisting of a letter written by Mr. Root to Mr. Easterby dated August 19, 1941, allegedly confirming a quotation given on the prior day for Mr. Kovler's risk and stating that the company wished to confirm the order for this insurance "to-day August 19th at two o'clock and further that we shall be unable to pre-date this policy as requested by the assured". The letter further states the assigned policy number and establishes that it is to be effective only from noon on August 19th. It is further stated that they would withhold the issuance of the policy until such time as they were advised whether this would be satisfactory.

It seems to this court that a full hearing is called for under all of the rather unusual circumstances. We agree with the contention of defendant that until the policy was issued, they had a right to make all of the changes they desired, if a binder had not been effective theretofore. The timing, the dates, the unusual circumstances, and the very fact that there was a telephone conversation between Easterby and the insurance company, and that a policy issued as a result of that telephone conversation, with all of its suggestive erasures and covering letters, constitutes in its entirety sufficient evidence to prevent plaintiff from being precluded by the vague recollections of Mr. Root, who was called for examination.

It is apparent that plaintiff was forced to call Kattleman to establish his conversations with Easterby. It was also necessary to call Root, manager of the insurance company, to prove that either Kattleman had lied to Kovler and consequently either Kattleman or Easterby was liable, or that Kattleman had not lied to

Kovler, and a binder or a policy had been issued effective August 15, 1941, which in effect would release both Kattleman and Easterby and impose liability on the company.

By calling these witnesses plaintiff did establish a cause of action. Either a binder, or a policy, conferring the benefits was granted or issued, or it was not. If a binder had been issued by an authorized agent of the insurance company, it was liable and a nonsuit should not have been entered against plaintiff. If a binder or policy was not issued by the authorized agent of the insurance company, then both Easterby and Kattleman, as brokers, were liable to plaintiff for the damage he suffered. Under the testimony of Kattleman, a nonsuit should not have been entered as to the brokers. Certainly, a nonsuit should not have been entered as to all of the parties, thereby allowing one of the responsible people to escape liability. Some one or more of these defendants must compensate plaintiff for his damage. The only way the individual defendants can be absolved of liability is if a binder was granted or the policy issued covering the risk.

There is no dispute that a valid obligation can be created by an oral binder: Rossi v. Firemen's Insurance Company, 310 Pa. 242; Harris v. Meyers et al., 160 Pa. Superior Ct. 607. It is not necessary that a policy be physically delivered to the insured prior to loss if there has been a binder: Pennsburg Manufacturing Company v. Pennsylvania Fire Insurance Company, 16 Pa. Superior Ct. 91.

We have examined the case of Harris v. Meyers, supra, which involves an unusually comparable situation and, by coincidence, one in which the same Charles T. Easterby was involved and attempted to avoid liability on a binder resulting from a telephone conversation. We do not believe the case to be controlling but it is judicial recognition of the modern practice of

insurance agents conducting business over the telephone. In that case, of course, Easterby was a general agent and he had authority to issue a binder for the company. In this case he was a broker who had no such authority. The liability of the company must rest upon the circumstantial evidence and the inference which the jury can reasonably deduce that in the conversation which Easterby had with the company, an authorized agent in Mr. Root's office did agree orally to bind this risk and accordingly did physically issue the policy, but prior to delivery made certain erasures and modifications in order to escape liability for the accident happening on August 19th. We do not say that this is a fact, but we believe that all of the evidence should be considered properly by a jury and the case should not be summarily disposed of by a nonsuit.

We are not unmindful of the legal effect of provisions contained in endorsements or riders so far as they supersede general provisions in the policy of insurance which are inconsistent therewith: Stallani v. The Belt Automobile Indemnity Association, 85 Pa. Superior Ct. 224, 227. Nor can we ignore the principle that a contract of insurance will, if possible, be so construed as to protect the insured and doubts, if any, be resolved in his favor: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 218.

A nonsuit can be entered only in clear cases, when it is inconceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion, in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved: Todd et al. v. Nesta, 305 Pa. 280, 287.

For the foregoing reasons therefore we are of the opinion that plaintiff's motion to remove the compulsory nonsuit should be granted.

*Order*

Now, to wit, July 16, 1951, plaintiff's motion to remove the compulsory nonsuit is granted.