264 F.2d 921
 Michael LYNN, by his next friend, Mrs. L. G. Lynn, Appellant,
v.
FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY, Known as Nationwide Insurance Company, Appellee.
Jo Nell Stafford GUEST, by her next friend, Mrs. Myrtle J. Stafford, Appellant,
v.
FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY, Known as Nationwide Insurance Company, Appellee.
 No. 7798.
 No. 7799.
 United States Court of Appeals Fourth Circuit.
 Argued January 6, 1959.
 Decided March 7, 1959.
 Rehearing Denied April 21, 1959.
 
 G. T. Carswell, James F. Justice and B. Kermit Caldwell, Charlotte, N. C. (Carswell & Justice, Charlotte, N. C., on brief), for appellants.
 W. T. Covington, Jr., and Mark R. Bernstein, Charlotte, N. C., for appellee.
 Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BOREMAN, District Judge.
 SOBELOFF, Chief Judge.
 
 
 1
 The minor plaintiffs sustained injury while passengers in the automobile owned and negligently operated by Amran Hassen, Jr. They seek recovery from the defendant on an operator's policy issued by Farm Bureau Mutual Automobile Insurance Company under the provisions of the North Carolina Motor Vehicle Safety and Responsibility Act. They rely also on an oral contract of insurance allegedly entered into between Hassen and the defendant. At the close of the plaintiffs' evidence the District Judge withdrew the case from the jury and granted the defendant's motion to dismiss, from which action the plaintiffs here appeal.
 
 
 2
 Hassen's driver's license had been revoked and as a prerequisite to its reinstatement he was required, by the Motor Vehicle Safety and Responsibility Act, General Statutes of North Carolina, Sec. 20-224 et seq., to furnish proof of financial responsibility. On November 8, 1952, Farm Bureau Mutual Automobile Insurance Company ("Farm Bureau") issued to Hassen, as an assigned risk, an operator's or non-owner's liability insurance policy covering Hassen's operation of any motor vehicle not owned by him. Hassen did not then own an automobile, but on October 22, 1953, shortly after attaining the age of twenty-one, he purchased a 1951 Oldsmobile from Joseph M. Barkley, an automobile salesman. Hassen testified that on the day of the purchase he telephoned Farm Bureau's office in Charlotte, North Carolina, and had the following conversation with an unidentified woman who answered the telephone, stating that the office was Farm Bureau's:
 
 
 3
 "* * * I told her I had a policy with the company and told her I was buying a car and would like to talk to someone about getting a car in my name and would like to find out what the additional premium would be. She said I would have to talk to Mr. Johnson. I told her I would like to talk to him. She said he wouldn't be in town until the following week. * * *
 
 
 4
 "* * * She told me I had 30 days to change my policy over and that I could talk with Mr. Johnson when I got back into town and not to worry about it as long as I notified them. * * *
 
 
 5
 "* * * I told the lady I was under assigned risk, that it went against my driver's license if I didn't have insurance and had to have it in order to drive. * * *
 
 
 6
 "* * * she told me I had insurance. I was trying to think in words how to put it. She said I had insurance and had 30 days to change it over. * * *"
 
 
 7
 To the Judge's query, Hassen answered that he knew he had only a non-owner's policy and would have to get some correction or a new policy when he purchased the car.
 
 
 8
 Barkley, the automobile salesman, testified that, later the same day and in Hassen's absence, he also called Farm Bureau's Charlotte office, asked the woman who answered for an opportunity to speak to "someone in charge," talked to an unidentified man and told him that Hassen had an assigned risk, non-owner's policy; and after giving the man the motor and serial numbers of the Oldsmobile, Barkley was told that Hassen "had insurance on" the car. The District Judge excluded proffered testimony to the effect that when Barkley informed Hassen of the telephone conversation, Hassen "ratified" this action of Barkley. The testimony should have been admitted. Barkley, familiar with what the situation required, undertook to act in Hassen's behalf. When assented to by Hassen, Barkley's acts became his. Evidence of such assent by Hassen and his reliance thereupon, was pertinent, and its exclusion was error.
 
 
 9
 On October 31, 1953, several days after these telephone conversations, the two minor plaintiffs and Alfred Smith Connelly sustained serious injury while riding in this Oldsmobile negligently operated by Hassen. Mr. Edsel Owen, an adjuster for Farm Bureau, issued a draft of the company to Connelly in the amount of $300 in full settlement for his injuries. Farm Bureau stopped payment on the draft but ultimately paid the $300. Later, however, the insurance company denied that the operator's policy it had issued covered Hassen's operation of the Oldsmobile and denied any additional oral commitment; and it refused to recompense the plaintiffs.
 
 
 10
 After recovering judgments against Hassen, which went unsatisfied, the plaintiffs brought this suit against Farm Bureau.
 
 
 North Carolina Motor Vehicle Safety and Responsibility Act
 
 
 11
 The operator's, or non-owner's policy, issued on November 8, 1952, and in force on the day of the accident, October 31, 1953, specifically excluded from coverage Hassen's operation of any motor vehicle owned by him. This policy was issued pursuant to the provisions of the Motor Vehicle Safety and Responsibility Act, General Statutes of North Carolina, Sec. 20-224 et seq., to which Hassen was subject. The plaintiffs contend that the North Carolina Financial Responsibility Act requires an operator's policy to provide coverage as well for the insured's operation of a vehicle he owns, and that therefore the exclusionary clause as to owned vehicles is repugnant to the North Carolina Act and invalid.
 
 
 12
 This contention, however, ignores the clear language of Sec. 20-227(3) of the Act, which requires an operator's policy to cover only the liability of the insured "arising out of the use by him of any motor vehicle not owned by him." (Emphasis supplied.) However desirable it might be to demand broadly inclusive coverage for the protection of the public, it is evident that the North Carolina Act does not require coverage for every risk under every circumstance. See Howell v. Travelers Indemnity Co., 1953, 237 N.C. 227, 74 S.E.2d 610, where the Supreme Court of North Carolina specifically rejected the contention that the Act should be construed to require every policy issued thereunder to cover the insured in his operation of any motor vehicle regardless of ownership. And Miller v. New Amsterdam Casualty Company, 1957, 245 N.C. 526, 96 S.E.2d 860, 863 recognized that the Act is complied with by obtaining either an owner's policy which explicitly describes the owned vehicle, or an operator's policy covering the use by the insured of any motor vehicle not owned by him.
 
 
 13
 The contention made by the plaintiffs in the instant case was also pressed but not accepted by this Court in Booth v. American Casualty Co., 4 Cir., 261 F.2d 389, 392, which construed the substantially identical financial responsibility law of South Carolina, South Carolina Code, Sec. 46-701 et seq. We there upheld the validity of the operator's policy which extended coverage only to nonowned vehicles, saying that nothing in the South Carolina Act "is sufficient to make an entirely new and different contract or to substitute an owner's policy for an operator's policy."
 
 
 14
 We therefore hold that an operator's policy limiting coverage to the insured's operation of vehicles not owned by him is consistent with the provisions of the North Carolina financial responsibility law and does not, of itself, extend coverage to a vehicle owned by the insured.[1]
 
 
 The Effect of the Telephone Conversation
 
 
 15
 The plaintiffs' second theory, however, is meritorious. They contend that the telephone conversations that Hassen and Barkley had with Farm Bureau's local office on October 22, 1953, nine days before the accident, effectively bound Farm Bureau to insure Hassen's operation of the Oldsmobile purchased by him that day.
 
 
 16
 The defendant would, of course, not be liable unless its local office had actual or apparent authority to contract in behalf of the defendant. An apparent agent is one who reasonably appears to third persons, because of the manifestations of another, to be authorized to act as agent for such other. Restatement, Agency, Sec. 8. comment a, p. 25 (1933 ed.). We do not have the usual situation where an independent insurance agency solicits business for an insurer. Here, the defendant had established its own office in the city of Charlotte with a staff of four employees, and this office was listed in the local telephone directory under its name. During 1953 the defendant wrote casualty, fire and life insurance through this office. These circumstances are a sufficient foundation for a member of the public reasonably to believe that the local office was authorized to transact business for the defendant.
 
 
 17
 Furthermore, it is not necessary that the persons spoken to at the defendant's office by Hassen and Barkley be further identified. In North Carolina, as in other states, courts take judicial notice of the general course of business and the usual methods of transacting it. Southeastern Express Co. v. City of Charlotte, 1923, 186 N.C. 668, 120 S.E. 475, 477. A vast volume of insurance business, particularly where persons have had previous business with the company, is transacted by telephone. In view of this recognized practice, several courts have said that it is not necessary to identify the party who answers the telephone at an established place of business listed in the telephone directory. Harris v. Sachse, 1947, 160 Pa.Super. 607, 52 A.2d 375; Ware v. Home Mutual Ins. Ass'n, 1938, 135 Neb. 329, 281 N.W. 617; VII Wigmore on Evidence, Sec. 2155, p. 620 (3d Ed.). Hassen spoke to a woman who, although informing him that he would have to talk to a Mr. Johnson, nevertheless proceeded to act as if in an authorized capacity by giving him assurances as to temporary coverage. Whatever lack there may have been in her authority was cured by the later conversation between Barkley and the man who purported to be "someone in charge."
 
 
 18
 It should also be noted that in North Carolina an insurance policy need not be reduced to writing before it becomes effective. Laughinghouse v. Farm Bureau Mut. Auto. Ins. Co., 1954, 239 N.C. 678, 80 S.E.2d 457.
 
 
 19
 However, the defendant contends that its liability, if any, is to be determined by general contract law; and that the telephone conversations fall short of evidencing a contract of insurance on Hassen's newly acquired Oldsmobile because (1) there was no meeting of the minds as to the essential terms and conditions, such as the amount of the premium, limits of liability and description of the automobile, and (2) there was no offer by Hassen for additional insurance and no acceptance by the unidentified persons spoken to in the defendant's local office. The defendant cites the general rule that an insurance contract, like other contracts must contain two prerequisites, namely, an offer and acceptance, 12 Appleman, Insurance Law & Practice, Sec. 7121, p. 155, and that the parties must arrive at a mutual understanding of the subject matter, the risk insured against, amount of insurance, duration of the risk and premiums payable, 12 Appleman, Insurance Law & Practice, Sec. 7122, pp. 161, 162.
 
 
 20
 These propositions are undoubtedly correct and present no difficulty when applied to the usual situation where a member of the public, desirous of obtaining automobile insurance, voluntarily makes application to or is solicited by an insurance company or its agent, so that a policy can be issued to the mutual satisfaction of both. But the defendant's contentions disregard the peculiar circumstances of this case. Here, a person whose driver's license had been revoked was required by law to furnish proof of financial responsibility in order to have his license reissued. Pursuant to Sec. 20-276 of the North Carolina Motor Vehicle Safety and Responsibility Act, the Commissioner of Insurance had approved an Automobile Assigned Risk Plan, designed to apportion equitably among the automobile insurance companies in the state the applicants for motor vehicle liability insurance who are required to furnish proof of financial responsibility but are unable to obtain such insurance through ordinary methods. Under the Plan, written application for insurance is made on a standard form to the Assigned Risk Department of the Motor Vehicle Department of the State, which in turn assigns the risk to an insurance carrier. Upon receipt of this assignment and application, the insurance company must within two working days issue a policy or binder on the basis of the information furnished in the application. The obligation of the designated company to insure the risk continues for a period of two years.
 
 
 21
 Hassen was such a risk assigned to the defendant in November, 1952, and the telephone conversations in question took place in October, 1953, long before the expiration of the two years. It is in this perspective that we must view the defendant's objections, heretofore mentioned, to the binding effect of the telephone conversations.
 
 
 22
 (1) Meeting of minds on the essential terms of the new insurance. It is true that there was no specific discussion by either Hassen or Barkley with the Farm Bureau office concerning the amount of the premium, the duration of the risk or the limits of liability. However, Sec. 20-227(c) of the Motor Vehicle Safety and Responsibility Act of North Carolina required a person subject to it to acquire as minimum coverage on each owned motor vehicle $5,000/$10,000 liability for personal injuries for any one accident and $1,000.00 for property damage for any one accident. The persons at the Farm Bureau office were fully apprised that Hassen was an assigned risk and as such could not lawfully operate a motor vehicle owned by him without insurance for this minimum amount. We think it may be assumed, or that a jury could reasonably infer, that the parties here contemplated that the insurance coverage that Hassen sought should meet, but need meet only, the minimum mandatory provisions of the financial responsibility law to which Hassen was subject. Compare Harris v. Sachse, 1947, 160 Pa.Super. 607, 52 A.2d 375, 379, where an employer applied for workmen's compensation insurance by telephone. The Pennsylvania court, holding that there was a meeting of the minds as to the terms of the policy, said:
 
 
 23
 "* * * since indemnity of an employer against statutory liability from accidental injury of employees was intended, it is conclusively presumed, in the absence of testimony on the subject, that the parties had in contemplation an oral contract upon the terms and conditions of a standard form of workmen's compensation policy in this State."
 
 
 24
 There was also agreement as to the other details. The duration of the policy could readily be assumed to be the customary year. Elliott v. Standard Acc. Ins. Co., 1943, 92 N.H. 505, 33 A.2d 562, 567. The description of the car to be insured was furnished by Barkley. The amount of the premium need not have been discussed, for an oral agreement to insure, without specifying the premium rate, is a contract to insure at the customary rates. American Surety Company of New York v. Williford, 8 Cir., 1957, 243 F.2d 494, 501.
 
 
 25
 (2) Offer and acceptance. The unidentified woman in the defendant's Charlotte office told Hassen that he had 30 days to change over his policy; the unidentified man told Barkley that Hassen had insurance. These statements are not necessarily, as the defendant suggests, mere opinions of these employees as to the extent of Hassen's coverage under the operator's policy issued by the company the previous November. A jury could reasonably interpret them as an agreement to new insurance, for these are the words customarily used in extending coverage. Hassen and Barkley knew that the existing operator's policy did not insure Hassen's operation of an owned vehicle, and they so informed the persons to whom they spoke in the defendant's office. Their obvious and declared purpose was to secure insurance coverage on the newly acquired vehicle as required by law. And the defendant, having been assigned Hassen as an insurance risk for two years, was contacted immediately. In this context, the remarks of the defendant's employees could infer an assent to provide Hassen with the insurance he needed and was then seeking.
 
 
 26
 The testimony raised a question for the jury.
 
 
 27
 Reversed and remanded for a new trial.
 
 
 
 Notes:
 
 
 [1]
 A different result would undoubtedly be compelled under the new financial responsibility law in North Carolina, Sec. 20-279.1 et seq. This recent statute, applicable to losses occurring after January 1, 1954, requires an operator's policy to cover the insured not only against loss "arising out of the use by him of any motor vehicle not owned by him" but also requires the operator's policy to cover the insured "within thirty (30) days following the date of its delivery to him of any motor vehicle owned by him." Sec. 20-279.21(c)