Charles CARIDEO, Jr.

v.

The PHOENIX ASSURANCE COMPANY OF NEW YORK, Marine Office of America, Chubb & Son, Inc. and Federal Insurance Company.

Civ. A. No. 42920.

United States District Court,
E. D. Pennsylvania.

Aug. 26, 1970.

Henry Temin, Filindo B. Masino, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Byrne, Labrum & Doak, Philadelphia, Pa., for defendants.

TROUTMAN, District Judge.

This is an action brought by plaintiff, Charles Carideo, Jr., assignee of Charles Carideo, Sr., upon two policies of insurance covering fire loss to a forty-five foot Diesel sport fishing yacht which was built for Charles Carideo, Sr., by Broward Marine, Inc.

Trial was had before this Court without a jury and evidence in the nature of testimony and exhibits have been introduced by both parties. After due consideration of all the evidence, the Court makes the following

I

## FINDINGS OF FACT

1. Plaintiff, Charles Carideo, Jr., is the surviving executor of the estate of his father, Charles Carideo, Sr. (hereinafter "Carideo"), and also the assignee of the interest of the beneficiaries of his father's estate in claims against Phoenix Assurance Company of New York (hereinafter "Phoenix") and Federal Insurance Company (hereinafter "Federal").

2. On or about February 24, 1966, Charles Carideo, Sr., now deceased, entered into a contract with Broward Marine, Inc. of Fort Lauderdale, Florida, to build a forty-five foot yacht (Exhibit DP-1, N.T. 3).

3. Under the terms of the contract, the yacht was to be completed within five months from the date of signing. All materials intended for the construction of the yacht, from the time when they were set apart for that purpose and the yacht itself, as it existed from time to time, in the process of construction and upon completion, were to immediately become the property of Charles Carideo, Sr. (Exhibit DP-1).

4. In accordance with the terms of the contract, Charles Carideo, Sr. was to make periodic payments towards the $62,000 purchase price, including a $10,-000 payment upon the signing of the contract, and four $13,000 payments at various stages of construction, the fourth and final payment to be payable after a satisfactory trial trip when the yacht was to be ready for delivery. (Exhibit DP-1).

5. In accordance with the further terms of the building contract, a contract of insurance issued by The Phoenix Assurance Company, termed Builder's Risk insurance, was taken out covering risk of loss, including fire, such loss being made payable to the parties, namely the builder and the owner, as their interest might appear during the construction (Exhibit DP-2).

6. Prior to the final payment, Charles Carideo, Sr. had paid $49,000 towards the purchase of the described yacht.

7. Building of the yacht was not completed within the five-month period prescribed in the construction agreement but the agreement nevertheless remained in effect.

8. On October 25, 1966, Charles Carideo, Sr., contacted his insurance broker, Zinman, Grossman, Lichtenstein Co., by telephone, spoke to Morrie Zinman and requested insurance on the Yacht VALERIE (N.T. 10, 11).

9. The specific request of Mr. Carideo, now deceased, is confirmed by two handwritten memoranda of the broker written that same day; the first made by Morrie Zinman (Exhibit DP-5) records the telephone conversation with Mr. Carideo, briefly describes the yacht as a "45" Fishman sports twin diesel, identifies the insured, Charles Carideo, and states the approximate amount of coverage needed, i. e., about $60,000; and the second (Exhibit DP-6) covering the specifics of what was required and to be requested of the insurance company, Federal, noting date, "10/25/66", subject matter, "New Boat". The memorandum also identified the person to contact "Steve Vorhees", an underwriter of Chubb & Son representing Federal Insurance Company (N.T. 12, 13, 14, 15).

10. That same day a representative of Messrs. Zinman, Grossman and Lichtenstein, one Betty Whitehill, contacted Mr. Vorhees of Chubb & Sons, the duly authorized agent for Federal Insurance Company, and requested over the telephone that he, on behalf of Federal, "Please bind pending details" in the sum of $60,000, as confirmed by the typewritten and handwritten memorandum of the conversation, a copy of which was duly sent to and received by Mr. Vorhees (Exhibit DP-7, 11, N.T. 16, 17, 41).

11. Mr. Stephen Vorhees of Chubb & Sons, an authorized representative of Federal Insurance Company, himself made a contemporaneous memorandum of that conversation noting that Mr. Zinman had called and requested a binder for $60,000, on a "45" Fishman sports. A further notation on this memorandum contains the letters ("eff") effective Oc-

tober 25, 1966, and noted it was "O.K." (Exhibit DP–10, N.T. 39, 40).

12. The foregoing conversations were further established by Miss Whitehill's handwritten notation on the copy of the confirming memorandum retained by Messrs. Zinman, Grossman and Lichtenstein, indicating "Spoke to Vorhees—O.K.—he will bind".

13. On November 3, 1966, a Certificate of Admeasurement, No. M67–73, was issued by the Treasury Department, Bureau of Customs, of the United States of America, covering the particulars of the Yacht VALERIE, built for Charles Carideo, Sr., and said certificate was duly executed by C. A. Riggs, Admeasurer, William House, Deputy Collector of Customs, and Charles Carideo, Sr., as owner, master or agent of the yacht described. The said certificate was thereafter filed with the Bureau of Customs, Philadelphia, Pa. (Exhibit DP–3 C).

14. On November 16, 1966, Charles Carideo, Sr., executed and filed various documents with the Bureau of Customs, Philadelphia, Pa., all reciting his ownership and interest in the said yacht as of that date. These include Oaths, Registry License for Enrollment of and License of Vessel (Exhibit DP 3 A, N.T. 3), Designation of Home Port (Exhibit DP–3 B), Certificate of Marking (Exhibit DP–3 D), Designation of Managing Owner (Exhibit DP–3 E), and Application of Owner for and Notice of Award of Official Number and Signal Letters (Exhibit DP–3 F).

15. On November 16, 1966, Charles Carideo, Sr., took title to the said yacht as reflected by the documents executed by him and filed with the Bureau of Customs.

16. On November 18, 1966, the yacht described above, named VALERIE, was destroyed by fire at the facilities of Broward Marine in Fort Lauderdale, Florida (N.T. 18).

17. Charles Carideo, Sr. subsequently died and the claim against the defendant insurance companies, Phoenix and Federal, became a part of his estate, and his son, Charles A. Carideo, became executor thereof (N.T. 6, 7).

18. It is undisputed that the alleged binder of insurance undertaken by Federal Insurance Company contemplated issuance of a policy on the yacht covering risk of loss by fire (N.T. 24, 43).

19. As an ordinary practice in the insurance business of Federal Insurance Company respecting binders, the final amount of the insurance in the binder would be determined upon completion of the application form showing the value of the property involved in detail. In the meantime, the binder in an approximate figure would be effective but subject to adjustment for the final value of the yacht upon completed documents.

20. Plaintiff sued Phoenix on a policy of builder's risk insurance which it issued on the boat being built for Mr. Carideo by Broward Marine, Inc., of Fort Lauderdale, Florida. Said insurance was admittedly in effect on November 18, 1966, when the boat was destroyed by fire in the boat yard of Broward Marine, Inc., (N.T. 54, 55).

21. Phoenix initially denied that its policy applied but subsequent to suit against it, paid one-half the amount of its policy coverage to Broward and Charles Carideo as their interests appeared by way of reduction of the amount in controversy without the knowledge, participation or agreement of Federal.

22. Subsequently, Phoenix determined to and did pay the remaining one-half of its coverage, and Broward and Charles Carideo were made whole as respects the hull of the boat. Phoenix secured the agreement of Federal that this payment could be made without prejudice to plaintiff's continuance of his suit (actually Phoenix's continuance of the suit) to determine whether Phoenix was solely liable to plaintiff or whether both Phoenix and Federal had coverage on the boat when it burned and, if this were so and there was double insurance, whether Federal was responsible for payment of one-half of the amount of its alleged oral binder or some other amount.

23. On December 21, 1966, Messrs. Zinman, Grossman and Lichtenstein submitted to Federal an invoice covering additional items placed on the yacht VALERIE totaling $2,744.31.

24. Including tax, the total value of the yacht VALERIE at the date of loss was $66,686.64.

## DISCUSSION

The issue presented in the instant case is whether a valid binder of insurance was created on October 25, 1966, by the various transactions between Charles Carideo, Sr. and his insurance broker Zinman, Grossman & Lichtenstein (Zinman) and the subsequent transactions between Zinman and Chubb & Sons, Inc., (Chubb), the authorized representative of Federal Insurance Co. (Federal). The facts adduced at trial indicate that on October 25, 1966, Charles Carideo, Sr. contacted his insurance broker Zinman and requested insurance on a forty-five foot pleasure yacht. Two handwritten memoranda confirm this fact and further briefly describe the subject-matter of the proposed contract of insurance (a forty-five foot Fishman sports yacht) and state the approximate amount of coverage needed, i. e., about $60,000. At this point, of course, no valid binder could have been created, as the initial conversation between Carideo and Zinman served merely as a request to Zinman to obtain the required approval for insurance from Federal. Furthermore, Mr. Zinman was not a general agent of Federal and had no authority to bind coverage on behalf of Federal. The express approval and acceptance of Federal's manager, Chubb & Sons, Inc., was required for insurance to be binding on Federal. Later that same day a binder, however, was requested of Federal by Morrie Zinman from Chubb & Sons, Inc., Federal's authorized agent. The substance of the transactions between Mr. Zinman and Mr. Vorhees, the manager of Chubb & Sons, Inc., is recorded by a contemporaneous memorandum made by Mr. Vorhees which contains the notations "EFF. October 25, 1966" and "O.K."

The same general description of the yacht and its value contained in the prior memorandum from Mr. Zinman's office are also apparent on these notations by Mr. Vorhees. A subsequent confirming memorandum made by Betty Whitehill of Mr. Vorhees' office states "Spoke to Vorhees,—O.K. he will bind".

Counsel for Federal argue that the above facts are insufficient to show that on October 25, 1966, a valid binder of insurance was created. Federal further argues that the contract of insurance, if any, which was created was merely an executory contract to insure in the future conditioned upon satisfactory performance upon final delivery of the yacht to Charles Carideo, Sr. This argument is based in part upon a provision in the Phoenix builder's risk policy which states that coverage thereunder was to be extended by Phoenix until a date certain or until delivery at an earlier date, thus indicating a lack of intent to have double insurance. Federal also argues that the binder of insurance, if any, is insufficient because it fails to detail with particularity the terms of the policy, the premiums, term of risk and other particulars concerning coverage.

An insurance binder is a contract of temporary insurance to be effective insurance coverage until a formal policy is drafted and issued. It is not a complete contract in a sense, but is evidence of the existence of a contractual obligation to be expressed in complete written form at a later date. Lester v. Century Indemnity Co., 356 Pa. 15, 50 A.2d 678 (1947). A binder is used when a policy is not immediately issued to evidence that insurance coverage attaches at a specific time and continues until the policy is issued or the risk is declined and notice thereof is given. Harris v. Sachse, 160 Pa.Super. 607, 52 A.2d 375 (1947). Like all contracts, a binder requires agreement of the minds of the parties and must have in contemplation the terms to be incorporated later in the written policy. *Harris, supra*. In the instant case the evidence demonstrates that Charles Carideo by his agent,

Morrie Zinman, requested a binder of insurance from Federal Insurance Co. through its agent, Chubb & Sons, Inc. Approval by Chubb & Sons of the request on its terms would constitute approval by Federal and would, therefore, make out the required meeting of the minds necessary to create a valid insurance binder.[1] This record indicates that such meeting of the minds took place as is evidenced by the written memoranda of phone conversations introduced and admitted into evidence. The subject-matter of the contract was generally but adequately defined as a new boat, 45 Fishman Sports, having an approximate value of $60,000, and being the property of the insured, Charles Carideo, Sr. The notations "O.K." and "EFF. October 25, 1966" indicate that the approval of Federal was given through its agent, Mr. Vorhees, and that the effective date of the binder was October 25, 1966. This is confirmed by the subsequent memorandum of Mr. Zinman's office by Betty Whitehill, "Spoke to Vorhees—O.K.—he will bind". Admittedly, the full particulars of coverage were not delineated at the time of loss nor had Mr. Carideo paid premiums upon the binder. However, it is not necessary that all the details of an insurance contract that may be finally expressed in the formal contract be specified in the binder; it is sufficient if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case. Rossi v. Fireman's Ins. Co., 310 Pa. 242, 165 A. 16 (1932). Nor is payment of premiums a necessary condition precedent to the validity of the binder. *Rossi, supra.* Such a contract, entered into without the issuance of a formal policy is to be regarded as made upon the terms and conditions contained in the company's standard policy. Here it has been conceded that Federal's standard Marine policy covers the precise risk which occasioned the loss of Mr. Carideo's yacht, namely, loss by fire.

As to the amount of insurance coverage, we have determined the amount to be $66,686.64 as of the date of the loss. In the usual course of proceedings respecting binders, the final amount of insurance would be determined upon completion of the application showing the value of the property involved in detail. In the meantime, the binder in the approximate figure of $60,000 was effective, but subject to adjustment for the final value of the yacht. The final value of the yacht according to extra items upon it at the time of loss was $66,686.-64. As there was a valid binder by Federal covering the yacht VALERIE, and since Phoenix's policy also covered the same subject-matter, there was double coverage on decedent's yacht. Therefore, we will direct that payment be made on a pro rata basis with each carrier to pay $33,343.32 or one-half of the value of the yacht VALERIE as its proportionate share of the risk insured.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject-matter of the claim.

2. Federal Insurance Company, through its authorized agent, Chubb & Son, Inc., issued an effective binder of insurance on the yacht VALERIE, owned by plaintiff and plaintiff's decedent, on October 25, 1966.

3. Although Federal's binder was indefinitely stated in the amount of $60,-000, it was thereafter properly amended by submission of detailed invoice covering costs to $66,686.64.

4. Since there was also a builder's risk insurance policy issued by Phoenix covering the same loss on the date in question, each insurance company defendant is liable to pay plaintiff one-half of the yacht's value on the date of loss; namely, $66,686.64 or $33,343.32, plus interest.

[1]. See Patterson v. Benjamin Franklin Ins. Co., 81 Pa. 454 (1875) ; Ripka v. Mutual Fire Ins. Co., 36 Pa.Super. 517 (1908). There is no dispute concerning the authen-ticity of Chubb & Sons' authority to represent Federal Insurance Co. and to bind Federal to contracts of insurance.